**CITY OF PASADENA, Petitioner,**

v.

**The STATE of Texas ex rel. CITY OF HOUSTON et al., Respondents.**

No. B–1013.

Supreme Court of Texas.

June 4, 1969.

Charles A. Easterling, Houston, for petitioner.

Joe G. Resweber, County Atty., Billy R. Kerr, Asst. City Atty., Sears & Burns, Will Sears, Frank L. Heard, Jr., Houston, for respondents.

POPE, Justice.

Houston's motion for rehearing is granted. We withdraw our original opinion and substitute this one for it.

The State of Texas, upon the relation of the City of Houston and others, instituted this quo warranto action to oust the City of Pasadena from certain territory which both cities claim they have annexed. Houston contends that it enacted an ordinance in 1963 and a group of other ordinances in 1965 which were earlier in time than Pasadena's 1965 annexation ordinances. Houston says that their annexation ordinances rendered the lands involved in the Pasadena ordinances nonadjacent to Pasadena. Pasadena asserts that all of the Houston ordinances are void. Both petitioner and respondents moved for summary judgment. The trial court rendered a summary judgment for Houston, sustaining the Houston ordinances and holding void the Pasadena ordinances. The court of civil appeals affirmed in part but severed the issues as to certain 1965 Houston ordinances, and ordered a dismissal of those issues. 428 S.W. 2d 388. We reverse the judgments of both courts and remand the cause to the trial court. We shall discuss the validity of (1) Houston's 1962 annexation ordinances, (2) Houston's 1965 annexation ordinances, and (3) Pasadena's 1965 annexation ordinances.

During 1960 Houston and Pasadena were both enacting ordinances which sought the annexation of overlapping territory. The area involved is generally southeast of Houston and south of Pasadena. In June of 1962 the two cities resolved their differences by an agreed judgment. The judgment recognized Pasadena's annexation of the territory which was adjacent to and north of the Genoa-Red Bluff Road. The judgment also declared that Houston, by its 1960 Ordinance 60–989,[1] had effectively pre-empted and had exclusive annexation jurisdiction over all unannexed territory in Harris County at the time of the judgment. Ordinance 60–989 was an annexation ordinance which was designed to annex the whole of Harris County which was not then included in some other municipality. The ordinance, at the time of the judgment, had passed only on first reading.

### The 1962 Houston Ordinance (62–1766)

On December 5, 1962, after the agreed judgment was entered, Houston passed Ordinance 62–1766 on first reading and finally passed the ordinance on January 6, 1963. By force of Ordinance 60–989 and the agreed judgment, Houston then had the exclusive jurisdiction to annex the territory described in its ordinance. Our only question is whether Houston validly exercised the power which the judgment preserved to it. Pasadena attacked the validity of the 1962 ordinance because it annexed territory which was not "lying adjacent to said city * * *." as required by Section 2, Article 1175, Vernon's Ann. Tex.Civ.Stats. The courts below have rejected this contention and have upheld the validity of the ordinance.

The property described in Ordinance 62–1766 was a long meandering strip of land

---

1. The first two digits of the Houston ordinances indicate the year the ordinances were passed.

which was ten feet wide. Commencing at Point A, which we have designated on the accompanying illustrative drawing, the strip touches ten feet of the Houston boundary

Shaded area — Houston 1965 Ordinances
Hatched area — Pasadena 1965 Ordinances

and then extends in an easterly direction along and adjacent to the southern boundary of Pasadena for about five miles to Point B. It proceeds on to the east to Galveston Bay (Point C). At Point D the strip proceeds west and southwesterly to and along a portion of the city limits of the City of Webster, thence generally northwesterly along Clear Creek to Point E where the strip again opens upon the boundary of Houston for a distance of ten feet. This thread of land extends from Point A to B, C, D, and E for a distance of more than fifty miles, but the ten-foot strip embraces only 97.3 acres of annexed lands. Pasadena says that this "filament" of land "lassoes" a vast body of 44,637 acres of unannexed land. The encircled body of land stretches for a distance of seventeen miles from West to east and a distance of ten miles from north to south.

Pasadena argues that the strip of land touches Houston only at its two openings (Points A and E) for a total distance of twenty feet. Houston says that the strip is adjacent over its entire length since the 1962 agreed judgment accorded Houston exclusive annexation jurisdiction to the whole of the territory, including that which was encircled. We do not agree with Houston's contention. A city's jurisdiction or exclusive power to annex is not the equivalent of annexation. The agreed judgment was not, itself, an annexation ordinance and did not extend the boundaries of Houston. The judgment recognized that Houston's Ordinance 60–989, which was a true annexation ordinance, but which was never finally enacted, was effective to accord Houston exclusive jurisdiction to annex by appropriate ordinances. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134 (1948). The judgment did not purport to excuse Houston from complying with the requirements set by the law for effecting a valid annexation. If the judgment had done so, there would have been no occasion for Houston's annexation of the ten-foot strip; it would already have been within the Houston city limits.

■ We conclude, therefore, that Ordinance 62–1766 was enacted at a time when

Houston had exclusive annexation jurisdiction over the strip taken as well as the large body of land which it encircled. We conclude .that none of the area over which Houston had annexation jurisdiction, had actually been annexed at the time it passed the ordinance. Whether or not the ten-foot strip was annexed to Houston depends upon the validity of Ordinance 62–1766. More particularly the question is whether the strip was "lying adjacent to said city," because it touched Houston at both ends of the strip. City of Irving v. Callaway, 363 S.W.2d 832 (Tex.Civ.App.1952, writ ref. n. r. e.); 62 C.J.S. Municipal Corporations § 72.

In City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571 (Tex.Sup. 1964), we held that adjacency was a law question. We held also that a finger of land which extended easterly from the eastern city limits of Irving, which body of land was surrounded on the north, east and south sides by the City of Dallas, was not adjacent to Irving. There are some factual differences between that case and this one, but we regard this case as one which presents a greater degree of non-adjacency than existed in City of Irving. From Point A to Point B on the map, the strip touches Houston for a distance of ten feet; it disproportionately touches Pasadena for a distance of five miles. We repeat our holding in State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780 (1957) that the Legislature used the word "adjacent" in the sense of being "contiguous" and "in the neighborhood of or in the vicinity of" a municipality. In City of Irving, supra, we stated an illustration of non-adjacency:

"  *   *   * 'Adjacency,' as between two Home Rule cities, must be tested by the facts in each case. By way of example, a 100-acre tract of land lying on the northern boundary line of the City of San Antonio is adjacent to that city but is not adjacent to Austin some 75 miles distant, although, conceivably, the 100-acre tract could be encompassed in lines drawn around a thin sliver or finger of unincorporated territory adjoining the southern boundary of Austin and running the full length of the 75 miles to the northern boundary of San Antonio."

The ten-foot strip is not adjacent to Houston.

### The 1965 Houston Ordinances

Houston also says it was entitled to a summary judgment because it enacted a number of annexation ordinances during 1965 which were prior in time to those enacted by Pasadena. Those ordinances, Houston argues, rendered the later Pasadena ordinances invalid since the Pasadena ordinances described lands which were not adjacent to Pasadena. The lands which Houston's 1965 ordinances purported to annex are indicated on the map by the shaded area. Pasadena, on the other hand, says that it is entitled to a summary judgment because Houston's 1965 ordinances are also void for non-compliance with the notice requirements of the Article 970a Municipal Annexation Act. Neither Houston nor Pasadena proved a right to a summary judgment.

On August 18, 1965, Houston, having doubts about the constitutionality of the Municipal Annexation Act, commenced annexation proceedings in two separate ways. It proceeded under the provisions of its charter and Article 1175 and independently of the Municipal Annexation Act, and accordingly passed Ordinances 65–1555A and 65–1555AR on first reading on August 17, 1965. It then passed Ordinance 65–1555AR on final reading on November 16, 1965. On August 18, 1965, Houston also passed its Ordinance 65–1561 by which it undertook to comply with the Municipal Annexation Act. On September 21, 1965, Houston passed Ordinance 65–1555BR on first reading and finally passed it on November 16, 1965.

After the 1962 agreed judgment, the 58th Legislature enacted the Municipal Annexation Act. The Act was a comprehensive statute which was designed to regulate all phases of municipal annexation and to avoid such conflicts between cities over unannexed territory as is evidenced by the history of the conflicts between Houston and Pasadena. It imposed new limitations upon annexations and established extraterritorial jurisdiction over unincorporated areas which cities could assert. It prescribed methods for resolving any overlap of extraterritorial jurisdiction between cities. It authorized an apportionment of such overlapping territory between cities by a consideration of a number of factors.

Houston says that the 1960 Ordinance 60–989 and the 1962 agreed judgment preserved its exclusive annexation jurisdiction to the territory embraced in its 1965 ordinances. By the time Houston passed its 1965 annexation ordinances, Ordinance 60–989 had lost all of its force. Section 7, subd. D of the Municipal Annexation Act said:

"D. All annexation proceedings by cities which are pending on or instituted after March 15, 1963, shall be subject to the limitations as to size and extent of area imposed by this Act and shall be brought to completion within ninety (90) days after the effective date of this Act or be null and void. Provided, however, any period of time during which a city is enjoined or restrained from completing such annexation proceedings by a court of competent jurisdiction shall not be computed in such ninety (90) day limitation period."

■ Ordinance 60–989, though pending since June of 1960 was not brought to completion by the statutory deadline which was November 20, 1963. In fact, Houston passed the ordinance on third reading on December 16, 1964; on fourth reading on August 18, 1965, and on fifth reading on July 20, 1966. It has never passed final reading. On November 20, 1963 Ordinance 60–989 had not been brought to completion and was thereafter void. Red Bird Village v. State ex rel. City of Duncanville, 385 S.W.2d 548 (Tex.Civ.App.1964, writ ref.).

Houston was not entitled to a summary judgment ousting Pasadena from the territory embraced by the 1965 Houston ordinances, since the basis of the summary judgment was that Houston was not required to comply with the Municipal Annexation Act. In our opinion, Houston was required to comply with that Act.

■ Pasadena also urged a motion for summary judgment that Houston's 1965 ordinances were void. In our original opinion, we held that Pasadena was entitled to a summary judgment. The basis of our former conclusion was that Pasadena proved the Houston ordinances were void by reason of non-compliance with the notice requirements stated in Section 6 of the Municipal Annexation Act. We are now convinced that Pasadena's motion for summary judgment did not assert nor put in issue the invalidity of the 1965 Houston ordinances by reason of non-compliance with the notice requirements.

Pasadena's motion stated specific grounds as a basis for its right to a summary judgment. It alleged: Pasadena enacted certain annexation ordinances during 1965 which predated Houston's 1965 ordinances; the Pasadena 1965 ordinances embraced lands which were within the exclusive annexation jurisdiction of Pasadena; Houston Ordinance 62–1766 (the strip ordinance) was void because the territory was not adjacent to Houston; Houston Ordinance 60–989 became void by reason of its lack of final passage within the time required by the Municipal Annexation Act; and the 1962 agreed judgment was ineffective to preserve Ordinance 60–989 beyond the date fixed by the Municipal Annexation Act. After asserting these specific grounds which did not mention non-compliance with the notice requirement of the Municipal

Annexation Act, Pasadena then generally alleged:

"The aforesaid Ordinances of the City of Houston, and the judgment are therefore wholly void and inoperative upon the face of the pleadings, the stipulations, the affidavits and the exhibits on file in this cause and Respondent, City of Pasadena, is accordingly entitled to judgment as a matter of law."

We held in In re Estate of Price v. State National Bank of El Paso, 375 S.W.2d 900 (Tex.Sup.1964) that one who moved for a summary judgment and specified the grounds for the judgment should not be granted a judgment upon any other grounds. We reversed a summary judgment which was granted upon unspecified grounds, saying that the one contesting the motion should not be deprived of a trial of an issue which the motion did not indicate was one of the grounds at issue if said ground could have been controverted. In our opinion Pasadena's motion for summary judgment did not inform Houston that its attack upon the 1965 Houston ordinances was grounded upon the lack of statutory notice, a ground which could have been controverted. Pasadena was not entitled to a summary judgment based on that issue.

### The 1965 Pasadena Ordinances

On August 20, 1965 Pasadena passed its Ordinances 1699 and 1700. On October 12, 1965 it passed its Ordinance 1722. The territory described in the Pasadena ordinances consisted of lands twenty-five hundred feet on either side of Middle Bayou and commencing at the southeasterly city limit line of Pasadena. The territory extended southeasterly down the Bayou for about five miles. Ordinance 1722 expanded this area. The area is indicated on the map by the hatched lines.

The Pasadena ordinances were enacted pursuant to the special and limited annexation statutes authorized by Articles 1183–1187, Vern.Tex.Civ.Stats. When the Fifty-Eighth Legislature enacted the Municipal

Annexation Act, it expressly provided that Articles 1183 through 1187 were not repealed or affected. Acts 1963, 58th Leg. p. 447, ch. 160, Art. III. Article 1183 authorizes a city to extend its boundary for limited purposes so as to include in the city a navigable stream and the land lying on both sides of the stream for a distance of twenty-five hundred feet from the thread of the stream and for a distance of not more than twenty miles in an air-line from the boundary of the city.

Our former opinion upheld the validity of Pasadena's 1965 ordinances after we held that Houston Ordinance 62–1766 and Houston's 1965 ordinances were void. Today's decision that the validity of Houston's 1965 ordinances must be determined upon another trial, renders it impossible for us to determine the validity of Pasadena's ordinances. Article 1183 required Pasadena's limited annexation ordinances to extend the city limits "from the ordinary boundaries of said city." City of Galena Park v. City of Houston, 133 S.W.2d 162 (Tex. Civ.App.1933, writ ref.). A decision upon another trial that Houston's 1965 ordinances met the requirements of the Municipal Annexation Act would bear upon Pasadena's compliance with Article 1183. The cause must be reversed for a determination of the validity of Houston's 1965 ordinances.

The trial court sustained Houston's motion for summary judgment and denied Pasadena's motion. That court declared Houston Ordinances 62–1766, 65–1555AR, 65–1555BR and 65–1561 valid; declared the Pasadena Ordinances 1699, 1700 and 1722 void; and ordered the ouster of Pasadena from the territory described in the Pasadena ordinances.

The court of civil appeals affirmed that part of the trial court's judgment which declared Houston Ordinance 62–1766 valid, declared the Pasadena Ordinances void, and ordered the ouster of Pasadena from the disputed territory. That court severed the issues as to the validity of Houston Ordinances 65–1555A, 65–1555AR, 65–1561 and

65–1555BR. The court ordered a reversal and remand with instructions to dismiss as to the issues concerning those ordinances; since Pasadena, having lost its case otherwise, was without any further interest in those issues.

We reverse the judgment of the courts below and remand the cause to the trial court for trial consistent with this opinion.

## ORDER ON MOTION TO DISMISS

█ City of Pasadena, City of Houston, the County Attorney of Harris County as attorney for the State of Texas, and Humble Oil and Refining Company, have filed a motion which asks that this court grant Houston's motion for rehearing, set aside our former opinion and judgment, rescind our order granting Pasadena's application for writ of error and order a dismissal of Pasadena's application for writ of error.

This motion was not filed until after this court handed down its opinion and just before it was prepared to rule on the motion for rehearing which Houston filed. The motion asks that this court, in effect, leave in force the judgment of the court of civil appeals. It does not ask a dismissal of the cause, though it states that the cause has been settled. Instead, the motion asks a dismissal only of the proceedings in this court. This is a case which concerns the public interest of other municipalities and the rights of taxpayers, under the Municipal Annexation Act. Since this is a matter of public concern which is governed by that Act, we have determined that we should overrule the motion.

We have today, on Houston's motion for rehearing, withdrawn our former opinion and remanded the cause to the trial court for its disposition. A motion to dismiss this cause would more appropriately be presented to the trial court.

The motion is overruled.

McGEE, J., not sitting.