NO. 07-03-0181-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A 





JANUARY 29, 2004



______________________________




JOSE SANTOS CERVANTES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 64TH DISTRICT COURT OF HALE COUNTY;



NO. A14649-0209; HONORABLE ROBERT W. KINKAID, JR., JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Following his conviction for theft, appellant Jose Santos Cervantes was placed on
community supervision for five years. Upon the State's motion to revoke community
supervision for violations of the conditions thereof, the trial court (1) conducted a hearing
at which appellant plead true to the State's allegations, (2) heard evidence, and (3) granted
the State's motion. Appellant was sentenced to two years confinement in a state jail
facility. After appellate counsel filed an Anders (1)
 brief and a motion to withdraw indicating
there is no meritorious error to present on appeal, appellant filed a pro se motion to dismiss
his appeal. 

 By his pro se motion, appellant represents that he agrees with his counsel that this
appeal is frivolous and requests that it be dismissed. No decision of this Court having been
delivered to date, the motion is granted and the appeal is dismissed. See Tex. R. App. P.
42.2(a). Counsel's motion to withdraw is also granted. No motion for rehearing will be
entertained and our mandate will issue forthwith.

 Don H. Reavis

 Justice


Do not publish.

 








 
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).






: 10pt">The clause stated that the “failure” of the lessee to:
\
\
                                      keep and observe the terms, covenants, conditions, and requirements, or any one of them,\
. . . shall entitle the [lessor or Burnett] . . . at his option, at the time of the breach, or at any\
time thereafter, to terminate this contract . . . without notice of any kind, Provided [sic] . . . that\
before advantage is taken of any such breach that notice thereof shall be served on [the\
lessee] . . . and reasonable time allowed within which to correct the conditions of which\
complaint is made.
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0321-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 11, 2009

______________________________


BURNETT RANCHES, LTD., et al. and
TEXAS CHRISTIAN UNIVERSITY,
 
Appellants

v.

CANO PETROLEUM, INC., et al.,

                                                                                                 Appellees

_________________________________

FROM THE 100th DISTRICT COURT OF CARSON COUNTY;

NO. 9840; HON. DAVID M. MCCOY, PRESIDING

_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          This is an appeal from summary judgments entered in favor of Cano Petroleum,
W.O. Energy of Nevada, Inc., W.O. Operating Company, Ltd., and WO Energy, Inc.,
(hereinafter collectively referred to as Cano) and against Anne Burnett Windfohr, Windi
Phillips, Ben Fortson, Jr., and Ed Hudson Jr., as trustees of the Tom L. and Anne Burnett
Trust, Burnett Ranches, Ltd., and Texas Christian University (collectively referred to as
Burnetts). The suit arose from a fire on property in which the Burnetts owned an interest. 
The Burnetts raise four issues on appeal and contend that the trial judge erred in granting
summary judgment, sustaining objections to portions of their summary judgment evidence,
and failing to recuse himself.


 We reverse in part and affirm in part.
          Background
          On March 12, 2006, during a period of extremely dry weather and high winds, a fire
ignited and burned the 6666 Ranch in Carson and Hutchinson Counties. The surface of
the 6666 Ranch was owned by Anne Burnett Windfohr and the Tom L. and Anne Burnett
Trust. The mineral rights were owned by Anne Burnett Windfohr and Texas Christian
University (TCU). Burnett Ranches, Ltd. runs cattle on the property, while W.O. Operating
conducts oil and gas operations on the ranch.
          The fire was believed to have originated on a portion of the ranch near a transformer
bank servicing the operations of W.O. Operating. The Burnetts filed suit, alleging claims
in negligence and breached contract; they also sought to terminate the oil and gas lease. 
Underlying their claims was the contention that Cano’s defective and improperly
maintained electrical lines caused the fire.
          The trial court granted Cano’s motions for summary judgment. Consequently, it
denied the Burnetts recovery on any of their claims. This appeal ensued from that
judgment.
          Summary Judgment on Negligence
          We first address the Burnetts’ issues encompassing negligence. They believe that
the trial court erred in granting summary judgment for a myriad of reasons.


 Upon
reviewing those contentions and the summary judgment record, we conclude that this
portion of the judgment must be reversed.
          As previously mentioned, the Burnetts alleged causes of action sounding in
negligence and contract. With regard to the former, their contention had at least two
aspects. According to the allegations in the Burnetts’ live pleading, Cano purportedly
“failed to take reasonable measures to prevent fires on the premises.” They further alleged
that it “failed to prevent those fires from spreading to other Ranch property.” Given that
pleadings must be liberally construed, Horizon/CMS Healthcare Corporation v. Auld, 34
S.W.3d 887, 897 (Tex. 2000), we conclude that two negligent acts or omissions were
allegedly committed by Cano, those being that it not only acted unreasonably in causing
the fire to ignite but also in allowing it to spread once it ignited.
          One reading that motion for summary judgment would discover six genral grounds
asserted therein. They involved the allegations that 1) “Chapter 95 of the Texas Civil
Practice and Remedies Code bar[red] any recovery for property damage,” 2) [n]o
Defendant owe[d] any duty to any Plaintiff or Intervenor,” 3) “[n]o Defendant had actual
knowledge of the danger or condition that allegedly resulted in property damage but failed
to adequately warn of it . . .,” 4) [t]he Lease [barred] any recovery in tort,” 5) no evidence
illustrated that “any Defendant had knowledge of a dangerous condition with regard to
claims of licensees or actual or constructive knowledge with regard to claims of invitees,”
and 6) no evidence showed that “the conduct of any Defendant proximately caused any
damage to any Plaintiff or intervenor.” Of those six, four focused upon a particular
“condition” that allegedly caused the fire, Cano’s responsibility for creating that “condition,”
and its obligation to become aware of and rectify it.


 Specifically, Cano posited that it did
not create the condition, had no knowledge of it, and violated no duties in failing to discover
it. So too did it believe that the existence of the “condition” did not cause the fire. Yet,
none of those four propositions encompassed Cano’s purported obligation to reasonably
prevent the fire from spreading once it began.



          And, while it may be that the remaining two grounds (i.e. Chapteer 95 of the Civil
Practice and Remedies Code and the lease language) conceivably could be read as
encompassing the failure to act once the fire began, neither have merit. For instance,
Chapter 95 insulates a “property owner” from liability “for personal injury, death, or property
damage” suffered by “a contractor, subcontractor, or an employee of a contractor or
subcontractor who constructs, repairs, renovates, or modifies” improvements to realty. 
Tex. Civ. Prac. & Rem. Code Ann. § 95.003 (Vernon 2005). We find no evidence
illustrating that the Burnetts were contractors, subcontractors, or employees of Cano
tasked with improving, repairing, or constructing improvements on the land when the fire
arose. So, Chapter 95 is inapplicable.
          Similarly inapplicable is the lease wording invoked by Cano to bar recovery. Per the
document, the parties agreed that the “party of the second part [i..e. Cano] and its assigns
shall pay all damages occasioned to fences or gates or any other part of the premises by
any willful act on the part of its servants or employees.” According to Cano, this verbiage
restricted its liability to damage arising solely from the willful conduct of its employees or
servants. Such a construction of the passage, however, is unreasonable given its context. 
For example, to be willful, one must be more than negligent. Michels v. Boruta, 122
S.W.2d 216, 220 (Tex. Civ. App.–Eastland 1938, no writ). That is, he must act with
purpose and design. Id.; accord Morrone v. Prestonwood Christian Academy, 215 S.W.3d
575, 582-83 (Tex. App.–Eastland 2007, pet. denied) (noting that willful means intentional
or, at least, connotes such an entire want of care so as to raise a belief that the act or
omission was the result of a conscious indifference to the right or welfare of others). On
the other hand, negligence encompasses no such mens rea, but rather the failure to act
reasonably under the circumstances then present. See id. Indeed, negligent and willful
conduct have been viewed as “opposites of each other.” Michels v. Boruta, 122 S.W.2d
at 220. This is of import here because under the lease, the original lessee obligated itself
and its assigns to “exercise reasonable care to prevent damage to the grass or other
property on said land.” In other words, Cano agreed to not act negligently when it came
to pursuing conduct that may damage the Burnetts’ property. Yet, if the lessee was only
obligated to avoid willfully damaging the Burnetts’ property, as suggested by Cano, then
the provision obligating it to act without negligence would be meaningless. Simply put, one
would be left to wonder why the lessee agreed to act reasonably if it was only responsible
for willful acts or omissions. So, because we generally cannot interpret one contractual
provision in a way that nullifies another, see Seagull Energy E & P, Inc. v. Eland Energy,
Inc., 207 S.W.3d 342, 345 (Tex. 2006), Cano’s interpretation of the lease provision is
inaccurate.
          Another reason exists to support our conclusion. One must remember that the
common law generally insulated an employer from liability for the willful or intentional acts
of its servants or employees. See e.g., Soto v. El Paso Nat. Gas Co., 942 S.W.2d 671,
680-81 (Tex. App.–El Paso 1997, writ denied) (indicating that intentional torts are not
ordinarily within the scope of an employee’s authority and, therefore, unattributable to the
employer). The provision relied upon by Cano obviously overrides that rule of law, which
the parties can do by contract. See id. 
          Given these two observations and the rule of construction obligating us to read a
contract in a way that gives life to all its wording when possible, Seagull Energy E & P, Inc.
v. Eland Energy, Inc., 207 S.W.3d at 342, we find only one reasonable construction of the
clause at issue. Rather than limit Cano’s liability to only willful acts, it expands its liability
to include damages arising from both negligent and willful conduct. 
          In sum, the allegation that Cano was negligent in failing to prevent the fire from
spreading was either unaddressed in or outside the scope of each ground mentioned in
its motion for summary judgment. Thus, the trial court had no authority to grant it. See
City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325, 330 (Tex. 1969). 
          As for the allegation that Cano was negligent in preventing the fire from igniting in
the first place, we conclude that entry of summary judgment was also inappropriate. This
is so for the following reasons. First, it sought to defeat liability by contending that it
retained an independent contractor, Kel-Tex Electric, Inc., to build and connect the
electrical lines in question. And, since it purportedly exercised no control over the manner
in which the independent contractor performed, it was not responsible for the contractor’s
negligence. See Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 791 (Tex. 2006) (holding that
one does not have a duty to assure that an independent contractor performs his work
safely). Yet, while Cano may have proffered evidence illustrating that it retained Kel-Tex
to perform its electrical work, other evidence raises questions as to whether Kel-Tex did
so. Thus, there exists a question of fact regarding Kel-Tex’s involvement. Yet, Cano
deemed this fact question unimportant because it believed that other “undisputed”
evidence established that, irrespective of which independent contractor actually built the
lines, it (Cano) did not. And, to support that contention, it tendered statements and data
garnered from its employees and officers. The type of evidence submitted, however, is of
concern.
          Given the employment relationship between those providing the evidence and Cano,
one can reasonably conclude that the former may have an interest in shielding the latter
from liability. Moreover, while it may be that those interested witnesses clearly assert that
Cano hired independent contractors to do the work in question, Cano representatives also
named Kel-Tex as that contractor. So, if the latter proposition is wrong and Kel-Tex did not
do the work, the accuracy of Cano’s overall assertion of non-involvement may be placed
in question. That is, it may not be farfetched for a jury to reasonably conclude that if Cano
was mistaken about one thing, it may be mistaken about other closely related matters. So,
the credibility and reliability of those Cano witnesses uttering favorable comments
regarding the retention of independent contractors is in play. And, because that is so, their
evidence does not support the entry of a summary judgment. See Tex. R. Civ. P.166a(c)
(stating that summary judgments may be granted upon the testimony of interested
witnesses only when that testimony is clear, positive, direct, credible, free from
inconsistencies and contradictions, and readily controvertible). 
          Second, the evidence cited to us by Cano purports to establish that it exercised no
control over the operations of the supposed independent contractor. Yet, that alone does
not necessarily free it from liability. One hiring such a contractor may be responsible for
its wrongs not only if it exercised control over the contractor’s work, but also if it retained
the right or power to control the manner in which the work was performed and failed to
exercise reasonable care in supervising the contractor. Clayton W. Williams, Jr., Inc. v.
Olivo, 952 S.W.2d 523, 528 (Tex. 1997). As stated in Clayton W. Williams, Jr., Inc. v.
Olivo, “[i]t is typically the general contractor’s right of control over the injury-causing activity
. . . that gives rise to a duty to ensure that the independent contractor performs . . . safely.” 
Id. (Emphasis added). If there is “no contractual right to control, however, the general
contractor can be liable if it actually exercised control . . . . .” Id. 
          Given Clayton, there are two ways in which Cano could be held responsible for the
acts of the supposed independent contractor that installed the electrical lines. But, it
asserted and cited us to evidence touching upon only one, i.e. the absence of control. 
That it had no right to control the alleged independent contractor, irrespective of whether
it exercised that right, was not established as a matter of law, according to that evidence
to which we have been cited. So, Cano failed to prove that it was insulated from liability
simply because it allegedly hired an independent contractor to build the electrical lines. 
Tex. R. Civ. P. 166a(c) (authorizing summary judgment if the movant establishes its
entitlement to same, as a matter of law). 
          As for the summary judgment ground regarding causation, Cano asserted that no
evidence illustrated that the defective wiring proximately caused the fire. To rebut this, the
Burnetts tendered the affidavits of two experts who attested that the messenger wire
assembly ignited the fire.


 Those opinions arose from the juxtaposition of the improperly
electrified messenger wire to the grounded guy wire, signs of arcing caused by the two
wires touching each other, the presence (at the time of the fire) of wind speeds sufficiently
high to cause the messenger and guy wires to come in contact, the emission of sparks (i.e.
molten metal) when the two wires came into contact, and the presence of dry foliage on
the ground. Moreover, at least one expert considered and then rejected other potential
causes of the fire. These opinions constitute some evidence sufficient to raise a material
issue of fact regarding whether the manner in which the electrical lines were built was a
cause-in-fact of the blaze. 
And, that sparks may emanate from a bare, electrified wire touching grounded metal
is common sense, a matter of common experience, and reasonably foreseeable. That this
is so is best illustrated by recalling what happens when the red lead of a battery charger
is mistakenly placed on the black (grounded) terminal of a car battery. Similarly
foreseeable and a matter of common experience or knowledge is the likelihood that sparks
can ignite dry, combustible materials, like grass. Simply asking a boy scout how to start
a campfire in the wilderness reveals this to be true. So, some evidence appears of record
satisfying both elements of proximate causation and tying the electrified messenger wire
to the fire.


 See McClure v. Allied Stores of Texas, Inc., 608 S.W.2d 901, 903 (Tex. 1980)
(holding that proximate cause has two components, cause-in-fact and reasonable
foreseeability). 
As for the remaining grounds for summary judgment uttered by Cano, they pertained
to theories of premises liability. We need not consider them, however. As previously
mentioned, the Burnetts conceded that they were not pursuing such a cause of action. 
Finally, the appellate contention that a non-operator, such as Cano, owed no duty
to the Burnetts was not included as a ground for summary judgment on the negligence
claims. And, that Cano asserted it owed “no duty” to the Burnetts did not fill the void. This
is so because the latter allegation was based upon Cano’s purported hiring of an
independent contractor to install the electrical lines and the insulation from liability garnered
under that circumstance. Nothing was said about Cano being a non-operator. So, since
the allegation was not raised below, it cannot support summary judgment on appeal. Tex.
R. Civ. P. 166a(c) (stating that summary judgment shall issue if there exists no genuine
issues of material fact and the movant establishes as a matter of law its entitlement to
judgment “on the issues expressly set out in the motion or in an answer or any other
response”); see City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d at 330
(stating that summary judgment cannot be affirmed on a ground omitted from the motion).
For the reasons stated above, we conclude that Cano was not entitled to summary
judgment on the claims of negligence. Thus, the trial court harmfully erred in granting it. 
Summary Judgment on Breach of Contract
Next, we consider whether summary judgment was appropriate on the Burnetts’
contractual claims. Again, the live petition before us contained causes-in-action sounding
in tort and breach of contract. Through the latter, Burnett sought to terminate the mineral
lease because Cano failed to exercise reasonable care to prevent damage to the grass
and property on the land and surrender possession of the surface and mineral interests
upon termination of the lease. Those obligations were purportedly contractual.


 And,
because they went unfulfilled, the lessor or their successors allegedly could terminate the
lease per another clause of the lease.



Cano attempted to defeat the assertion by moving for summary judgment. Though
its motion included both traditional and no-evidence grounds, most involved the issue of
whether the Burnetts provided the requisite notice and opportunity to cure. Yet, grounds
encompassing other argument were also alleged. For instance, Cano had averred that a
“one-time event, such as a fire, is not a remediable event and does not support termination
under the terms of the Lease . . . [but rather] if anything, a claim for damages.” Despite its
inclusion, the Burnetts did not address it on appeal. Nor did the trial court specify any
particular grounds as the basis for its decision to grant the summary judgment. Under
these circumstances, the Burnetts had the duty to explain why none of the grounds
mentioned in the motion warranted summary judgment. Aust v. Conroe I.S.D., 153 S.W.3d
222, 226 (Tex. App.–Beaumont 2004, no pet.) (stating that when the trial court grants
summary judgment without specifying the grounds, the appellant must show it was error
to base the judgment on any ground asserted in the motion); Lyco Acquisition 1984 Ltd.
Partnership v. First Nat’l Bank, 860 S.W.2d 117, 119 (Tex. App.–Amarillo 1993, writ
denied) (stating the same). And, because it did not, we overrule the issue. 
Excluded Evidence
Next, the Burnetts complain of the trial court’s decision to exclude certain summary
judgment evidence. We overrule the issue.
First, we examine the decision to exclude evidence provided by Scott White, Tommy
Hefner, and Joe Leather. Cano alleged various grounds purportedly rendering that
evidence inadmissible. The trial court sustained Cano’s objections but again failed to state
the basis for its decision. And, while the Burnetts addressed some of the grounds
underlying Cano’s objections, they did not explain or tender argument illustrating why all
were deficient. Rather, they simply concluded that they were baseless. Such an argument
does not satisfy the requirements of Texas Rule of Appellate Procedure 38.1(h). In the
Interest of M.J.G., 248 S.W.3d 753, 760-61 (Tex. App.–Fort Worth 2008, no pet. h.)
(holding that conclusory or unexplained arguments without substantive analysis do not
satisfy the requirements of Rule 38.1(h) and result in the waiver of the issue). Therefore,
the contentions were waived.
The same is true regarding 1) the comments by Jeffrey Johnson and John Lacik,
and 2) the Cano press release. The Burnetts’ argument again is conclusory and cites no
legal authority supporting their position. Nor did their argument address all grounds urged
by Cano as rendering the evidence inadmissible, such as that implicating Texas Rule of
Evidence 403 (permitting a trial court to exclude evidence when its relevance is
substantially outweighed by the risk of undue prejudice as well as the risk of confusing or
misleading the jury, among other things). Thus, their effort fell short of establishing why
the trial court’s decision to exclude the evidence constituted an abuse of discretion. See
Texas Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000) (holding that the decision
to admit or exclude evidence is tested against the standard of abused discretion); Duerr
v. Brown, 262 S.W.3d 63, 69 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (requiring the
appellant to illustrate why no ground supported the trial court’s exercise of discretion). 
Third, the trial court excluded, as unauthenticated, a writing and recording from
Cano’s website. Counsel for the Burnetts attested that the former was a “true and correct
copy of Cano Petroleum’s Environmental Overview printed from its website” and the latter
was “a true and correct copy of excerpts from AMEX TV Interview of S. Jeffrey Johnson
obtained from Cano’s website.” So identifying the former was sufficient to establish its
authenticity in Daimler-Benz v. Olson, 21 S.W.3d 707, 717 (Tex. App.–Austin 2000, pet.
dism’d w.o.j.) (wherein the affiant attested that the documents were true and accurate
copies of the originals). Yet, the affiant here did not establish that the website from which
he secured the document was actually that of Cano. Indeed, most anyone with knowledge
of the internet may be able to create a website. And, while it may be arguable that most
information found on the internet is what it purports to be, we cannot simply assume that
all of it is. Also missing from the affiant’s comments were statements revealing that he
knew or recognized the voice of Jeffrey Johnson and that the voice excerpts captured from
the website were actually those of Johnson. Consequently, we cannot say that the trial
court abused its discretion in excluding the items as unauthenticated. See Amis v. State,
910 S.W.2d 511, 516 (Tex. App.–Tyler 1995, writ ref’d) (holding that the recorded message
was not properly authenticated since the witness attempting to authenticate it could not
conclusively identify appellant’s voice). 
Fourth, the trial court erred in refusing to allow the late designation of Jay Baze and
Roy Tarpley as experts on the causes of fires, according to the Burnetts. This was
allegedly so because Cano would suffer no prejudice or unfair surprise. Yet, the order
signed by the trial judge did not state that it ruled as it did simply because of prejudice or
surprise. Indeed, it may well have relied on the witnesses’ own testimony in denying them
that status. The record reveals that neither Baze nor Tarpley considered themselves
experts in the area of what causes fires due to their training, experience or lack thereof. 
Given this, we cannot say that the trial court abused its discretion in denying the Burnetts
opportunity to belatedly designate the two as experts. 
 
 
Recusal
Finally, the Burnetts objected to the order denying its motion to recuse the trial
judge. Allegedly, recusal was appropriate once the trial judge disclosed his “animosity”
towards an expert witness retained by the Burnetts. This purported “animosity” was
disclosed after the trial court convened its hearing on the summary judgment motions in
question. We overrule the issue.
The record reveals that the Burnetts did not move to recuse the trial judge
immediately after they discovered the aforementioned ground. Rather, they continued with
the summary judgment hearing. So too did they later agree to submit to a special master
the question of whether the testimony of the expert in question was admissible. 
Conceivably, this procedure could or would insulate the decision to either permit or disallow
his testimony from potential bias and, that way, the existing trial judge could continue to
preside over the matter. 
Authority holds that a motion to recuse should be filed at the earliest practicable
time after the grounds for recusal become known to the parties. Carmody v. State Farm
Lloyds, 184 S.W.3d 419, 422 (Tex. App.–Dallas 2006, no pet.). Given that the Burnetts
delayed in seeking the trial judge’s recusal and actually took steps to retain him after the
latter revealed his supposed “animosity,” the regional presiding judge who ultimately
refused to order recusal could have legitimately deemed the motion as untimely. And,
because he could have, we will not disturb the decision.
While other matters and contentions were asserted by the parties in their respective
briefs, the resolution of those contentions is not necessary to the disposition of this appeal. 
Accordingly, we will not address them. And, upon addressing those which are necessary
to a final disposition, we reverse that portion of the summary judgment denying the
Burnetts recovery on their claims of negligence, remand that portion of the suit to the trial
court, and affirm the remainder of the judgment.
 
 
                                                                Brian Quinn
                                                               Chief Justice