# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0555

═══════════

MIKE MORATH, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE
TEXAS EDUCATION AGENCY, PETITIONER,

v.

VIRGINIA DIANE LEWIS, INDIVIDUALLY AND AS NEXT FRIEND TO C.J.L., ET AL.,
RESPONDENTS

═══════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════

**PER CURIAM**

This case comes before the Court on the plaintiff-Respondents' "Motion to Dismiss Appeal as Moot." For the reasons explained below, we grant that motion. We also grant the petition for review, dismiss the case as moot, and vacate both the judgment and the opinion of the court of appeals without respect to the merits.

## I. Background

A group of parents of Texas public school students sued Mike Morath in his official capacity as the Commissioner of the Texas Education Agency. The suit alleges TEA administered the 2015–2016 standardized STAAR exams in violation of the governing statutes. Morath filed a plea to the jurisdiction, arguing that the plaintiffs' *ultra vires* claims could not proceed for several reasons, including that the plaintiffs lack standing and that TEA did not violate the law in

administering the test. The trial court denied the plea to the jurisdiction. Morath appealed, and the court of appeals affirmed, holding that the plaintiffs adequately pleaded *ultra vires* claims under *City of El Paso v. Heinrich* and related decisions. *Morath v. Lewis*, No. 03-16-00603-CV, 2018 WL 1527875, at *3–4 (Tex. App.—Austin, Mar. 29, 2018, pet. granted) (mem. op.).

Morath petitioned for review. His PFR alleges that the plaintiffs lack standing, that the court of appeals misconstrued the relevant statutes, and that the court of appeals' opinion improperly expands the availability of *ultra vires* relief by requiring TEA to spend funds not appropriated by the Legislature. This Court requested a response to the petition. After receiving that response and a reply, the Court requested merits briefs. After Morath filed his merits brief, Respondents decided to cease pursuing their claims. They filed in this Court a "Notice of Nonsuit Without Prejudice" and moved to dismiss the appeal as moot. Morath opposes the motion to dismiss. He argues that a non-suit in this procedural posture is ineffective and that, even if the non-suit were effective, the appeal should not be dismissed because it "involves a matter of public concern." He also argues that, if the motion to dismiss is granted, this Court should vacate the court of appeals' opinion in addition to its usual practice, in moot cases, of vacating the court of appeals' judgment. Respondents filed a reply, re-urging their arguments for dismissal of the appeal without addressing the State's request to vacate the court of appeals' opinion. As explained below, the Court grants Respondents' motion to dismiss and grants the State's request to vacate the court of appeals' opinion.

## II. Effectiveness of the Non-suit

"At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the

minutes." TEX. R. CIV. P. 162. The State argues that Respondents' non-suit, filed directly in this Court, is procedurally defective and should be given no effect. As the State sees it, Rule 162 applies only in trial courts, and there is currently a stay of all trial court proceedings during this interlocutory appeal, so the plaintiffs cannot file a non-suit in the trial court. Moreover, the State argues, there is no mechanism in the appellate rules for a non-suit filed directly in the Supreme Court. In the State's view, there is no procedural vehicle by which the plaintiff may accomplish a unilateral non-suit at this juncture, and Respondents may only achieve dismissal with the State's agreement. This is incorrect.

"The plaintiff's right to take a nonsuit is *unqualified and absolute* as long as the defendant has not made a claim for affirmative relief." *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840 (Tex. 1990). Contrary to the State's position, a plaintiff's right to abandon its claims does not disappear when trial court proceedings are stayed pending interlocutory appeal. In precisely this procedural posture—appeal of the denial of the government's plea to the jurisdiction, with all trial court proceedings stayed—this Court previously recognized a plaintiff's "absolute right to take a non-suit *in this Court* because he took it before he presented all his evidence and rested his case in chief." *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 157 (Tex. 2007) (emphasis added). This Court's prior decisions also suggest that, even during an interlocutory appeal, Rule 162 remains the appropriate procedural mechanism for such a non-suit. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) ("Rule 162 applies in this case because Shultz filed the nonsuit while this matter was pending on interlocutory appeal from UTMB's pretrial plea to the jurisdiction.").

3

Here, Respondents filed a "Notice of Nonsuit Without Prejudice" directly in this Court, citing Rule 162. We have accepted Rule 162 non-suits directly in this Court before, and we do so again in this case. Giving effect to such filings comports with our previous decisions in *Ferrell* and *Estate of Blackmon*. More importantly, it acknowledges the limits on our jurisdiction. In *Ferrell*, as in this case, the plaintiff-respondent non-suited its case "in this Court" in response to the defendant's Supreme Court briefing. We accepted Ferrell's non-suit, "noting that it moots his case, not merely his appeal." *Ferrell*, 248 S.W.3d at 157 (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71–72 (1997)). We have also held that "[u]nder these circumstances, the nonsuit *extinguishes a case or controversy* from the moment the motion is filed . . . ." *Estate of Blackmon*, 195 S.W.3d at 100 (emphasis added). Because the plaintiff's non-suit "moots his case" by "extinguish[ing] a case or controversy," the non-suit is not merely the end of the case. It is the end of the Court's power to decide the case, assuming there are no claims for relief against the non-suiting party. *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex. 2010) (holding that after non-suit in the trial court, "there was no live controversy for the court of appeals to decide"). Whether or not Rule 162 formally applies in the Supreme Court, a case is generally moot once the plaintiff declares its abandonment of all claims for relief. *Id.* ("[N]on-suit typically moots the case or controversy from the moment of its filing or pronouncement in open court."). The plaintiffs did so here, the case is now moot, and we are therefore obligated in the absence of jurisdiction to dismiss the case one way or another.[1]

---

[1] The consequences of a plaintiff's abandonment of its claims, for purposes of res judicata or otherwise, may vary depending on the stage of the case at which the abandonment occurs. But once all claims for relief are unconditionally abandoned, no justiciable case or controversy remains. *See Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016).

The State argues that the automatic stay of trial court proceedings precludes a Rule 162 non-suit filed in the trial court. Because we accept the plaintiff's non-suit filed directly in this Court, we need not consider whether a non-suit could be filed in the trial court during a section 51.014 stay. We note, however, that neither a statutory stay of trial court proceedings nor any other statute could vest this Court or any other with authority to decide moot cases in violation of the constitutional limitations on our jurisdiction. However it is achieved procedurally, the plaintiffs' total abandonment of their claims for relief "extinguishes" jurisdiction. *Estate of Blackmon*, 195 S.W.3d at 100. We are obligated to consider our jurisdiction at all times, and we will not ignore the obvious cessation of it merely because the rules of appellate procedure do not explicitly designate a procedural mechanism for non-suits during interlocutory appeals. *See, e.g.*, *In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (per curiam); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam).

The State further argues that even if the non-suit is procedurally effective, we should nevertheless require Respondents to continue to litigate a case they have abandoned because the case involves "a matter of public concern." The State contends this Court previously required as much in *City of Pasadena v. State ex rel. City of Houston*, 442 S.W.2d 325 (Tex. 1969). But that case bears little resemblance to this one. In *City of Pasadena*, the parties settled their dispute after the Court issued its opinion but while a rehearing motion remained pending. *Id.* at 331. They jointly asked the Court to withdraw its opinion and dismiss the application for writ of error. *Id.* The Court declined, instead issuing a substitute opinion on rehearing, in part because of the public importance of the legal issues involved. *Id.* Assuming for the sake of argument that *City of Pasadena* recognized a "matter-of-public-concern" exception to mootness, it did so very narrowly in

5

response to the parties' attempt at the rehearing stage to force the withdrawal of a previously issued opinion of the Court. *Id. City of Pasadena* certainly did not require a plaintiff to continue litigating an appeal despite its desire to abandon its claims, as the State suggests we should do here.

We do not have power to decide moot cases, whether they "involve a matter of public concern" or not. *See City of Krum v. Rice*, 543 S.W.3d 747, 750 (Tex. 2017) (per curiam). Indeed, the need for courts to mind their jurisdictional bounds is perhaps at its greatest in cases involving questions of public importance, where the potential for undue interference with the other two branches of government is most acute. If courts were empowered to ignore the usual limits on their jurisdiction, such as mootness, when matters of public concern are at stake, then we would no longer have a judiciary with limited power to decide genuine cases and controversies. We would have a judiciary with unbridled power to decide any question it deems important to the public. That is not the role assigned to the courts by our constitution. *See* TEX. CONST. art. II, § 1; *Morath v. Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 886 (Tex. 2016); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 726 (Tex. 1995). The State points to no case where this Court or any other has required a party to continue litigating claims it has abandoned merely because there is public interest in the outcome. We will not do so here.

### III. Vacatur of the Court of Appeals' Opinion

The State requests, in the alternative, that we vacate the opinion of the court of appeals in addition to our usual practice of vacating the court of appeals' judgment when cases become moot on appeal to this Court. For the reasons explained below, we grant the State's request.

6

"The rule has long been established in this court that when a case becomes moot on appeal, all previous orders are set aside by the appellate court and the case is dismissed." *Tex. Foundries v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 461 (Tex. 1952). Historically, however, vacatur of "all previous orders" upon mootness has not often included vacatur of the court of appeals' opinion. *See, e.g.*, *Houston Cable TV, Inc. v. Inwood W. Civic Ass'n*, 860 S.W.2d 72, 73–74 (Tex. 1993) (vacating court of appeals' judgment in response to mootness caused by settlement but declining to vacate the court of appeals' opinion). Unlike in federal practice, where vacatur of the appellate judgment entails vacatur of the written judicial opinion supporting the judgment, Texas practice contemplates that a court of appeals' judgment may be vacated without also vacating the corresponding opinion. *See id.*; *accord Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999).

Our reluctance to vacate court of appeals opinions in the past has never been because of concern that we lack the power to do so. The rules of appellate procedure and our prior decisions contemplate that this Court has the power to vacate court of appeals opinions in moot cases, though that power has seldom been exercised. *See* TEX. R. APP. P. 56; *Houston Cable TV*, 860 S.W.2d at 73. Rule 56.2, governing our handling of moot cases, does not mention vacatur of lower court judgments or opinions. *See* TEX. R. APP. P. 56.2. It provides only that when a case becomes moot on appeal, this Court may "grant the petition and, without hearing argument, dismiss the case or the appealable portion of it without addressing the merits of the appeal." *Id.* Rule 56.2 sets no parameters at all for the content of this Court's order "dismiss[ing] the case" in response to mootness. *Id.* And Rule 60.6 generally authorizes "any other appropriate order required by the law and nature of the case." TEX. R. APP. P. 60.6. This broad authority to issue "any other appropriate

order" includes the authority to vacate court of appeals opinions in conjunction with Rule 56.2 dismissal orders where appropriate.

While no rules of procedure *specifically* authorize this Court to vacate court of appeals opinions in moot cases, certainly no rule forecloses it. Indeed, the rules are written under the assumption the Court may do so. Rule 56.3, governing settlements, authorizes this Court to effectuate a settlement by "setting aside the judgment of the court of appeals." *See* TEX. R. APP. P. 56.3. Far from restricting this Court's authority to also set aside the court of appeals' opinion, however, the rule provides that the Court's "order does not vacate the court of appeals opinion *unless the order specifically provides otherwise*." *Id.* (emphasis added). Thus, Rule 56.3 contemplates that this Court *can* vacate court of appeals opinions in response to mootness when it chooses to do so. The rule simply provides a default presumption against vacatur of the opinion for cases that have been mooted by settlement.

Our prior cases declining to vacate court of appeals opinions further confirm we may do so in an appropriate case. In *Houston Cable*, we declined to vacate the opinion because to do so in response to settlement would have allowed "a private agreement between litigants [to] operate to vacate a court's writing on matters of public importance." 860 S.W.2d at 73. Absent such a concern, *Houston Cable* contemplates that vacatur of the opinion could be the appropriate response to mootness in some cases. *See id.*

We agree with the State that this is one such case. As the United States Supreme Court has recognized, "when a civil case becomes moot pending appellate adjudication . . . [v]acatur 'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Arizonans*, 520 U.S. at 71 (citing *United States v. Munsingwear, Inc.*, 340 U. S. 36,

39–40 (1950)). The purpose of vacatur in this context is "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *Munsingwear*, 340 U.S. at 41. The Supreme Court has acknowledged, as we did in *Houston Cable*, that courts should carefully scrutinize parties' attempts to manipulate judicial precedent by settlement. *See United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994). Rule 56.3 codifies this concern by establishing a presumption that settlements do not result in vacatur of court of appeals opinions. But there is no settlement in this case. Instead, the party who succeeded in the court of appeals voluntarily dropped its claims, precluding the opposing party from seeking review of an adverse outcome in the court of appeals. Where, as here, "mootness results from unilateral action of the party who prevailed below," the case for preventing the unreviewable decision "from spawning any legal consequences" is at its strongest. *Id.* at 25; *Munsingwear*, 340 U.S. at 41.

Vacatur of the judgment alone may in most cases satisfy the petitioner's desire to be free from the consequences of an unreviewable outcome in the court of appeals. But that is not always the case, and it is not the case here. The State is a frequent litigant. An adverse precedent in the court of appeals district where most suits against state officials are brought carries undeniable consequences for future litigation involving the State. We held in *Houston Cable* that "the precedential authority of a court of appeals opinion which is not vacated under these circumstances is equivalent to a 'writ dismissed' case." 860 S.W.2d at 73 n.3. Despite the history notation accompanying it, an unvacated court of appeals opinion in such a case plainly has some meaningful precedential value. The State contends, plausibly, that the opinion in this case, if not vacated, is likely to be treated as binding by courts and litigants throughout the Third District. In other words, vacating the judgment alone will not truly "clear[] the path for future relitigation" because the

9

outcome of future relitigation would be heavily influenced by an opinion the State was prevented from challenging by no fault of its own. We agree.

Of course, future litigants and courts are free to consult a vacated opinion and to rely on it if they find it persuasive. In vacating the court of appeals' opinion without respect to the merits, we make no comment on its correctness. Vacatur removes the opinion's binding precedential nature but does not strike it from case reporters or foreclose litigants and courts in future cases from relying on it as persuasive authority. Thus, while we use the term "vacated" to describe the court of appeals' opinion in this case, the practical effect of today's action is to remove from the opinion any formal precedential effect. Again, we previously compared the precedential status of a court of appeals opinion after the judgment has been vacated to a case bearing the notation "writ dismissed." *Id.* Whatever the precise import of that notation, "vacating" such an opinion simply eliminates any binding precedential effect it may have. This ensures the path is truly clear for relitigation by indicating to lower courts and future panels of the court of appeals that they are under no obligation to follow the opinion in future cases. It does not, however, eliminate altogether "the public nature of the court of appeals opinion." *Id.* at 73. The opinion has been vacated without respect to the merits, and it remains available as guidance to litigants and courts who find it persuasive.

Similar to the way the U.S. Supreme Court approaches vacatur of judgments, we will approach vacatur of a court of appeals opinion in a moot case as a discretionary equitable remedy available only when the Court "concludes that the public interest would be served by a vacatur."

10

*See Bancorp*, 513 U.S. at 26 (internal citations omitted).[2] That is the case here. Given all the circumstances of this case, declining to vacate the court of appeals opinion despite the State's inability to challenge it would be an inequitable result that would not serve the public interest. First, mootness is wholly the result of voluntary action by the party who prevailed below. Second, the legal issues involved are potentially of consequence to schools across Texas and to the government's defense of *ultra vires* claims in other contexts. Third, the non-suit came only after at least three judges of this Court decided the case was sufficiently worthy of further examination to request merits briefs. We do not suggest Respondents in this case non-suited in hopes of preserving a favorable appellate precedent after this Court showed interest in reviewing it. But we cannot be blind to the possibility for such gamesmanship if court of appeals opinions on issues of public importance can be insulated from Supreme Court review by strategically timed non-suits.

For the foregoing reasons, we grant Respondents' motion to dismiss, grant the petition in part, dismiss the case, and vacate the court of appeals' judgment and opinion without respect to the merits.

**OPINION DELIVERED:** April 17, 2020

---

[2] The factors the U.S. Supreme Court considers when deciding whether to vacate a *judgment* are helpful, as applied to Texas practice, when this Court is asked to vacate an *opinion*. We do not suggest those same considerations must be taken into account when we are asked to vacate a judgment in a moot case. Rule 56 and our precedent provide for vacatur of *judgments* in moot cases without close consideration of the equities. That longstanding practice of this Court is not at issue here and is not affected by this opinion.