NO. 07-07-0321-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 11, 2009

_____


BURNETT RANCHES, LTD., et al. and
TEXAS CHRISTIAN UNIVERSITY,

Appellants

v.

CANO PETROLEUM, INC., et al.,

Appellees

_____

FROM THE 100th DISTRICT COURT OF CARSON COUNTY;

NO. 9840; HON. DAVID M. MCCOY, PRESIDING

_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This is an appeal from summary judgments entered in favor of Cano Petroleum,

W.O. Energy of Nevada, Inc., W.O. Operating Company, Ltd., and WO Energy, Inc.,

(hereinafter collectively referred to as Cano) and against Anne Burnett Windfohr, Windi

Phillips, Ben Fortson, Jr., and Ed Hudson Jr., as trustees of the Tom L. and Anne Burnett

Trust, Burnett Ranches, Ltd., and Texas Christian University (collectively referred to as Burnetts). The suit arose from a fire on property in which the Burnetts owned an interest. The Burnetts raise four issues on appeal and contend that the trial judge erred in granting summary judgment, sustaining objections to portions of their summary judgment evidence, and failing to recuse himself.[1] We reverse in part and affirm in part.

*Background*

On March 12, 2006, during a period of extremely dry weather and high winds, a fire ignited and burned the 6666 Ranch in Carson and Hutchinson Counties. The surface of the 6666 Ranch was owned by Anne Burnett Windfohr and the Tom L. and Anne Burnett Trust. The mineral rights were owned by Anne Burnett Windfohr and Texas Christian University (TCU). Burnett Ranches, Ltd. runs cattle on the property, while W.O. Operating conducts oil and gas operations on the ranch.

The fire was believed to have originated on a portion of the ranch near a transformer bank servicing the operations of W.O. Operating. The Burnetts filed suit, alleging claims in negligence and breached contract; they also sought to terminate the oil and gas lease. Underlying their claims was the contention that Cano's defective and improperly maintained electrical lines caused the fire.

---

[1]Within issue five, the Burnetts assert that the administrative law judge abused his discretion in granting a motion to quash the deposition of James Farren. However, the allegations were conclusory and accompanied by no briefing; therefore, the complaint was waived. *See* TEX. R. APP. P. 38.1(h) (requiring a brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the record); *see Croos v. M1 Real Estate Partners, Ltd.,* 238 S.W.3d 474, 488 (Tex.App.–Dallas 2007, pet. denied) (stating that the failure to brief an issue results in its waiver).

2

The trial court granted Cano's motions for summary judgment. Consequently, it denied the Burnetts recovery on any of their claims. This appeal ensued from that judgment.

*Summary Judgment on Negligence*

We first address the Burnetts' issues encompassing negligence. They believe that the trial court erred in granting summary judgment for a myriad of reasons.[2] Upon reviewing those contentions and the summary judgment record, we conclude that this portion of the judgment must be reversed.

As previously mentioned, the Burnetts alleged causes of action sounding in negligence and contract. With regard to the former, their contention had at least two aspects. According to the allegations in the Burnetts' live pleading, Cano purportedly "failed to take reasonable measures to prevent fires on the premises." They further alleged that it "failed to prevent those fires from spreading to other Ranch property." Given that pleadings must be liberally construed, *Horizon/CMS Healthcare Corporation v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000), we conclude that two negligent acts or omissions were allegedly committed by Cano, those being that it not only acted unreasonably in causing the fire to ignite but also in allowing it to spread once it ignited.

One reading that motion for summary judgment would discover six genral grounds asserted therein. They involved the allegations that 1) "Chapter 95 of the Texas Civil Practice and Remedies Code bar[red] any recovery for property damage," 2) [n]o Defendant owe[d] any duty to any Plaintiff or Intervenor," 3) "[n]o Defendant had actual

---

[2]Cano filed both a traditional and no evidence motion for summary judgment.

3

knowledge of the danger or condition that allegedly resulted in property damage but failed to adequately warn of it . . .," 4) [t]he Lease [barred] any recovery in tort," 5) no evidence illustrated that "any Defendant had knowledge of a dangerous condition with regard to claims of licensees or actual or constructive knowledge with regard to claims of invitees," and 6) no evidence showed that "the conduct of any Defendant proximately caused any damage to any Plaintiff or intervenor." Of those six, four focused upon a particular "condition" that allegedly caused the fire, Cano's responsibility for creating that "condition," and its obligation to become aware of and rectify it.[3] Specifically, Cano posited that it did not create the condition, had no knowledge of it, and violated no duties in failing to discover it. So too did it believe that the existence of the "condition" did not cause the fire. Yet, none of those four propositions encompassed Cano's purported obligation to reasonably prevent the fire from spreading once it began.[4]

And, while it may be that the remaining two grounds (*i.e.* Chapteer 95 of the Civil Practice and Remedies Code and the lease language) conceivably could be read as encompassing the failure to act once the fire began, neither have merit. For instance, Chapter 95 insulates a "property owner" from liability "for personal injury, death, or property damage" suffered by "a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies" improvements to realty. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (Vernon 2005). We find no evidence illustrating that the Burnetts were contractors, subcontractors, or employees of Cano

---

[3]The "condition" at issue consisted of placing a hot, uninsulated wire too close to a bare metal guy wire. So locating the wires allowed them to release sparks when the blowing wind allowed them to touch.

[4]More importantly, the Burnetts deny that they averred a claim based on premises liability; so, these four grounds are irrelevant in its estimation.

4

tasked with improving, repairing, or constructing improvements on the land when the fire arose.  So, Chapter 95 is inapplicable.

Similarly inapplicable is the lease wording invoked by Cano to bar recovery.  Per the document, the parties agreed that the "party of the second part [*i..e.* Cano] and its assigns shall pay all damages occasioned to fences or gates or any other part of the premises by any willful act on the part of its servants or employees."  According to Cano, this verbiage restricted its liability to damage arising solely from the willful conduct of its employees or servants.  Such a construction of the passage, however, is unreasonable given its context.  For example, to be willful, one must be more than negligent.  *Michels v. Boruta,* 122 S.W.2d 216, 220 (Tex. Civ. App.–Eastland 1938, no writ).  That is, he must act with purpose and design.  *Id.; accord Morrone v. Prestonwood Christian Academy,* 215 S.W.3d 575, 582-83 (Tex. App.–Eastland 2007, pet. denied) (noting that willful means intentional or, at least, connotes such an entire want of care so as to raise a belief that the act or omission was the result of a conscious indifference to the right or welfare of others).  On the other hand, negligence encompasses no such *mens rea*, but rather the failure to act reasonably under the circumstances then present.  *See id.*  Indeed, negligent and willful conduct have been viewed as "opposites of each other."  *Michels v. Boruta,* 122 S.W.2d at 220.  This is of import here because under the lease, the original lessee obligated itself and its assigns to "exercise reasonable care to prevent damage to the grass or other property on said land."  In other words, Cano agreed to not act negligently when it came to pursuing conduct that may damage the Burnetts' property.  Yet, if the lessee was only obligated to avoid *willfully* damaging the Burnetts' property, as suggested by Cano, then

5

the provision obligating it to act without negligence would be meaningless. Simply put, one would be left to wonder why the lessee agreed to act reasonably if it was only responsible for willful acts or omissions. So, because we generally cannot interpret one contractual provision in a way that nullifies another, *see Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006), Cano's interpretation of the lease provision is inaccurate.

Another reason exists to support our conclusion. One must remember that the common law generally insulated an employer from liability for the willful or intentional acts of its servants or employees. *See e.g., Soto v. El Paso Nat. Gas Co.*, 942 S.W.2d 671, 680-81 (Tex. App.–El Paso 1997, writ denied) (indicating that intentional torts are not ordinarily within the scope of an employee's authority and, therefore, unattributable to the employer). The provision relied upon by Cano obviously overrides that rule of law, which the parties can do by contract. *See id*.

Given these two observations and the rule of construction obligating us to read a contract in a way that gives life to all its wording when possible, *Seagull Energy E & P*, *Inc. v. Eland Energy, Inc.,* 207 S.W.3d at 342, we find only one reasonable construction of the clause at issue. Rather than limit Cano's liability to only willful acts, it expands its liability to include damages arising from both negligent and willful conduct.

In sum, the allegation that Cano was negligent in failing to prevent the fire from spreading was either unaddressed in or outside the scope of each ground mentioned in its motion for summary judgment. Thus, the trial court had no authority to grant it. *See City of Pasadena v. State ex rel. City of Houston,* 442 S.W.2d 325, 330 (Tex. 1969).

6

As for the allegation that Cano was negligent in preventing the fire from igniting in the first place, we conclude that entry of summary judgment was also inappropriate. This is so for the following reasons. First, it sought to defeat liability by contending that it retained an independent contractor, Kel-Tex Electric, Inc., to build and connect the electrical lines in question. And, since it purportedly exercised no control over the manner in which the independent contractor performed, it was not responsible for the contractor's negligence. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006) (holding that one does not have a duty to assure that an independent contractor performs his work safely). Yet, while Cano may have proffered evidence illustrating that it retained Kel-Tex to perform its electrical work, other evidence raises questions as to whether Kel-Tex did so. Thus, there exists a question of fact regarding Kel-Tex's involvement. Yet, Cano deemed this fact question unimportant because it believed that other "undisputed" evidence established that, irrespective of which independent contractor actually built the lines, it (Cano) did not. And, to support that contention, it tendered statements and data garnered from its employees and officers. The type of evidence submitted, however, is of concern.

Given the employment relationship between those providing the evidence and Cano, one can reasonably conclude that the former may have an interest in shielding the latter from liability. Moreover, while it may be that those interested witnesses clearly assert that Cano hired independent contractors to do the work in question, Cano representatives also named Kel-Tex as that contractor. So, if the latter proposition is wrong and Kel-Tex did not do the work, the accuracy of Cano's overall assertion of non-involvement may be placed in question. That is, it may not be farfetched for a jury to reasonably conclude that if Cano

7

was mistaken about one thing, it may be mistaken about other closely related matters. So, the credibility and reliability of those Cano witnesses uttering favorable comments regarding the retention of independent contractors is in play. And, because that is so, their evidence does not support the entry of a summary judgment. *See* TEX. R. CIV. P.166a(c) (stating that summary judgments may be granted upon the testimony of interested witnesses only when that testimony is clear, positive, direct, credible, free from inconsistencies and contradictions, and readily controvertible).

Second, the evidence cited to us by Cano purports to establish that it exercised no control over the operations of the supposed independent contractor. Yet, that alone does not necessarily free it from liability. One hiring such a contractor may be responsible for its wrongs not only if it exercised control over the contractor's work, but also if it retained the right or power to control the manner in which the work was performed and failed to exercise reasonable care in supervising the contractor. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). As stated in *Clayton W. Williams, Jr., Inc. v. Olivo*, "[i]t is typically the general contractor's *right* of control over the injury-causing activity . . . that gives rise to a duty to ensure that the independent contractor performs . . . safely." *Id.* (Emphasis added). If there is "no contractual right to control, however, the general contractor can be liable if it actually exercised control . . . . ." *Id.*

Given *Clayton*, there are two ways in which Cano could be held responsible for the acts of the supposed independent contractor that installed the electrical lines. But, it asserted and cited us to evidence touching upon only one, *i.e.* the absence of control. That it had no right to control the alleged independent contractor, irrespective of whether

8

it exercised that right, was not established as a matter of law, according to that evidence to which we have been cited. So, Cano failed to prove that it was insulated from liability simply because it allegedly hired an independent contractor to build the electrical lines. TEX. R. CIV. P. 166a(c) (authorizing summary judgment if the movant establishes its entitlement to same, as a matter of law).

As for the summary judgment ground regarding causation, Cano asserted that no evidence illustrated that the defective wiring proximately caused the fire. To rebut this, the Burnetts tendered the affidavits of two experts who attested that the messenger wire assembly ignited the fire.[5] Those opinions arose from the juxtaposition of the improperly electrified messenger wire to the grounded guy wire, signs of arcing caused by the two wires touching each other, the presence (at the time of the fire) of wind speeds sufficiently high to cause the messenger and guy wires to come in contact, the emission of sparks (*i.e.* molten metal) when the two wires came into contact, and the presence of dry foliage on the ground. Moreover, at least one expert considered and then rejected other potential causes of the fire. These opinions constitute some evidence sufficient to raise a material issue of fact regarding whether the manner in which the electrical lines were built was a cause-in-fact of the blaze.

And, that sparks may emanate from a bare, electrified wire touching grounded metal is common sense, a matter of common experience, and reasonably foreseeable. That this is so is best illustrated by recalling what happens when the red lead of a battery charger

---

[5]Cano complains of the trial court's decision to admit this particular testimony since the individuals allegedly failed to qualify as experts. The trial court overruled those complaints, and we conclude that it did not abuse its discretion in doing so, given the education, expertise, investigation, and experience of the witnesses.

is mistakenly placed on the black (grounded) terminal of a car battery. Similarly foreseeable and a matter of common experience or knowledge is the likelihood that sparks can ignite dry, combustible materials, like grass. Simply asking a boy scout how to start a campfire in the wilderness reveals this to be true. So, some evidence appears of record satisfying both elements of proximate causation and tying the electrified messenger wire to the fire.[6] *See McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex. 1980) (holding that proximate cause has two components, cause-in-fact and reasonable foreseeability).

As for the remaining grounds for summary judgment uttered by Cano, they pertained to theories of premises liability. We need not consider them, however. As previously mentioned, the Burnetts conceded that they were not pursuing such a cause of action.

Finally, the appellate contention that a non-operator, such as Cano, owed no duty to the Burnetts was not included as a ground for summary judgment on the negligence claims. And, that Cano asserted it owed "no duty" to the Burnetts did not fill the void. This is so because the latter allegation was based upon Cano's purported hiring of an independent contractor to install the electrical lines and the insulation from liability garnered under that circumstance. Nothing was said about Cano being a non-operator. So, since the allegation was not raised below, it cannot support summary judgment on appeal. TEX. R. CIV. P. 166a(c) (stating that summary judgment shall issue if there exists no genuine issues of material fact and the movant establishes as a matter of law its entitlement to

---

[6]We further note that this ground for summary judgment did not test whether evidence existed establishing the causal link between the Burnetts' injury and Cano's purported failure to reasonably curtail the fire's spread once it started. So it cannot be the basis for summary judgment on that aspect of the Burnetts' negligence claim.

judgment "on the issues expressly set out in the motion or in an answer or any other response"); *see City of Pasadena v. State ex rel. City of Houston*, 442 S.W.2d at 330 (stating that summary judgment cannot be affirmed on a ground omitted from the motion).

For the reasons stated above, we conclude that Cano was not entitled to summary judgment on the claims of negligence. Thus, the trial court harmfully erred in granting it.

*Summary Judgment on Breach of Contract*

Next, we consider whether summary judgment was appropriate on the Burnetts' contractual claims. Again, the live petition before us contained causes-in-action sounding in tort and breach of contract. Through the latter, Burnett sought to terminate the mineral lease because Cano failed to exercise reasonable care to prevent damage to the grass and property on the land and surrender possession of the surface and mineral interests upon termination of the lease. Those obligations were purportedly contractual.[7] And, because they went unfulfilled, the lessor or their successors allegedly could terminate the lease per another clause of the lease.[8]

Cano attempted to defeat the assertion by moving for summary judgment. Though its motion included both traditional and no-evidence grounds, most involved the issue of whether the Burnetts provided the requisite notice and opportunity to cure. Yet, grounds

---

[7]Again, the parties had "stipulated" in the lease that the lessee and its assigns would "exercise reasonable care to prevent damage to the grass and other property on said land."

[8]The clause stated that the "failure" of the lessee to:

keep and observe the terms, covenants, conditions, and requirements, or any one of them, . . . shall entitle the [lessor or Burnett] . . . at his option, at the time of the breach, or at any time thereafter, to terminate this contract . . . without notice of any kind, Provided [sic] . . . that before advantage is taken of any such breach that notice thereof shall be served on [the lessee] . . . and reasonable time allowed within which to correct the conditions of which complaint is made.

11

encompassing other argument were also alleged. For instance, Cano had averred that a "one-time event, such as a fire, is not a remediable event and does not support termination under the terms of the Lease . . . [but rather] if anything, a claim for damages." Despite its inclusion, the Burnetts did not address it on appeal. Nor did the trial court specify any particular grounds as the basis for its decision to grant the summary judgment. Under these circumstances, the Burnetts had the duty to explain why none of the grounds mentioned in the motion warranted summary judgment. *Aust v. Conroe I.S.D.,* 153 S.W.3d 222, 226 (Tex. App.–Beaumont 2004, no pet.) (stating that when the trial court grants summary judgment without specifying the grounds, the appellant must show it was error to base the judgment on any ground asserted in the motion); *Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l Bank*, 860 S.W.2d 117, 119 (Tex. App.–Amarillo 1993, writ denied) (stating the same). And, because it did not, we overrule the issue.

*Excluded Evidence*

Next, the Burnetts complain of the trial court's decision to exclude certain summary judgment evidence. We overrule the issue.

First, we examine the decision to exclude evidence provided by Scott White, Tommy Hefner, and Joe Leather. Cano alleged various grounds purportedly rendering that evidence inadmissible. The trial court sustained Cano's objections but again failed to state the basis for its decision. And, while the Burnetts addressed some of the grounds underlying Cano's objections, they did not explain or tender argument illustrating why all were deficient. Rather, they simply concluded that they were baseless. Such an argument does not satisfy the requirements of Texas Rule of Appellate Procedure 38.1(h). *In the*

12

*Interest of M.J.G.,* 248 S.W.3d 753, 760-61 (Tex. App.–Fort Worth 2008, no pet. h.) (holding that conclusory or unexplained arguments without substantive analysis do not satisfy the requirements of Rule 38.1(h) and result in the waiver of the issue). Therefore, the contentions were waived.

The same is true regarding 1) the comments by Jeffrey Johnson and John Lacik, and 2) the Cano press release. The Burnetts' argument again is conclusory and cites no legal authority supporting their position. Nor did their argument address all grounds urged by Cano as rendering the evidence inadmissible, such as that implicating Texas Rule of Evidence 403 (permitting a trial court to exclude evidence when its relevance is substantially outweighed by the risk of undue prejudice as well as the risk of confusing or misleading the jury, among other things). Thus, their effort fell short of establishing why the trial court's decision to exclude the evidence constituted an abuse of discretion. *See Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000) (holding that the decision to admit or exclude evidence is tested against the standard of abused discretion); *Duerr v. Brown,* 262 S.W.3d 63, 69 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (requiring the appellant to illustrate why no ground supported the trial court's exercise of discretion).

Third, the trial court excluded, as unauthenticated, a writing and recording from Cano's website. Counsel for the Burnetts attested that the former was a "true and correct copy of Cano Petroleum's Environmental Overview printed from its website" and the latter was "a true and correct copy of excerpts from AMEX TV Interview of S. Jeffrey Johnson obtained from Cano's website." So identifying the former was sufficient to establish its authenticity in *Daimler-Benz v. Olson*, 21 S.W.3d 707, 717 (Tex. App.–Austin 2000, pet.

13

dism'd w.o.j.) (wherein the affiant attested that the documents were true and accurate copies of the originals). Yet, the affiant here did not establish that the website from which he secured the document was actually that of Cano. Indeed, most anyone with knowledge of the internet may be able to create a website. And, while it may be arguable that most information found on the internet is what it purports to be, we cannot simply assume that all of it is. Also missing from the affiant's comments were statements revealing that he knew or recognized the voice of Jeffrey Johnson and that the voice excerpts captured from the website were actually those of Johnson. Consequently, we cannot say that the trial court abused its discretion in excluding the items as unauthenticated. *See Amis v. State*, 910 S.W.2d 511, 516 (Tex. App.–Tyler 1995, writ ref'd) (holding that the recorded message was not properly authenticated since the witness attempting to authenticate it could not conclusively identify appellant's voice).

Fourth, the trial court erred in refusing to allow the late designation of Jay Baze and Roy Tarpley as experts on the causes of fires, according to the Burnetts. This was allegedly so because Cano would suffer no prejudice or unfair surprise. Yet, the order signed by the trial judge did not state that it ruled as it did simply because of prejudice or surprise. Indeed, it may well have relied on the witnesses' own testimony in denying them that status. The record reveals that neither Baze nor Tarpley considered themselves experts in the area of what causes fires due to their training, experience or lack thereof. Given this, we cannot say that the trial court abused its discretion in denying the Burnetts opportunity to belatedly designate the two as experts.

14

*Recusal*

Finally, the Burnetts objected to the order denying its motion to recuse the trial judge. Allegedly, recusal was appropriate once the trial judge disclosed his "animosity" towards an expert witness retained by the Burnetts. This purported "animosity" was disclosed after the trial court convened its hearing on the summary judgment motions in question. We overrule the issue.

The record reveals that the Burnetts did not move to recuse the trial judge immediately after they discovered the aforementioned ground. Rather, they continued with the summary judgment hearing. So too did they later agree to submit to a special master the question of whether the testimony of the expert in question was admissible. Conceivably, this procedure could or would insulate the decision to either permit or disallow his testimony from potential bias and, that way, the existing trial judge could continue to preside over the matter.

Authority holds that a motion to recuse should be filed at the earliest practicable time after the grounds for recusal become known to the parties. *Carmody v. State Farm Lloyds*, 184 S.W.3d 419, 422 (Tex. App.–Dallas 2006, no pet.). Given that the Burnetts delayed in seeking the trial judge's recusal and actually took steps to retain him after the latter revealed his supposed "animosity," the regional presiding judge who ultimately refused to order recusal could have legitimately deemed the motion as untimely. And, because he could have, we will not disturb the decision.

While other matters and contentions were asserted by the parties in their respective briefs, the resolution of those contentions is not necessary to the disposition of this appeal. Accordingly, we will not address them. And, upon addressing those which are necessary

15

to a final disposition, we reverse that portion of the summary judgment denying the Burnetts recovery on their claims of negligence, remand that portion of the suit to the trial court, and affirm the remainder of the judgment.


Brian Quinn
Chief Justice