

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00236-CV

EMILIO ROMERO AND LINDA K. ROMERO, APPELLANTS

V.

STEWART TITLE GUARANTY, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-09C-057, Honorable Roland D. Saul, Presiding

January 27, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL, and HANCOCK, JJ.

Emilio Romero and Linda K. Romero (the Romeros) appeal from a judgment entered after a bench trial in favor Stewart Title Guaranty (Stewart) for breach of warranty. They contend that 1) the evidence is legally and factually insufficient to support their breach of the warranty of good title and 2) that the doctrine of equitable subrogation is inapplicable. We affirm the judgment.

In 2002, Magnum Tire Corporation took a judgment against the Romeros and placed a valid lien upon certain real property they owned. Several years later, the Romeros filed for bankruptcy. They were represented in that proceeding by their trial

counsel in this proceeding.  In that bankruptcy, the Magnum Tire debt was discharged as to the personal liability but apparently a valid lien still remained against the property. In 2007, the Romeros sold the property to Raul and Rocio Nevarez (the Nevarezes). The attorney representing the Romeros at bar and during the bankruptcy (and who knew of the Magnum Tire lien) also drafted the warranty deed by which the Romeros were to convey the realty to the Nevarezes.  The trial court found that 1) "[t]he Deed warranted that there were no liens or encumbrances against the Property at the time of sale, and 2) "[t]his warranty was false as the Magnum lien was in fact a valid encumbrance against the Property."  The Romeros also executed an "Affidavit as to Debts, Liens, and Possessions" as part of the transaction; while that document mentioned the existence of several liens, nothing was said of the Magnum Tire encumbrance.[1]

Prior to closing, A. O. Thompson Abstract Co. issued a title insurance policy underwritten by Stewart in favor of the Nevarezes.  The final commitment by Stewart referenced the Magnum Tire lien but, having been provided a copy of the bankruptcy discharge, stated that a release was not required.  However, the Romeros' counsel testified that he advised the Romeros prior to closing that he believed the lien was still valid.  Yet, they went ahead and signed a general warranty deed in which they agreed to "warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof . . . ."

---

[1] Via the affidavit, they also agreed to indemnify the "PURCHASERS AND/OR LENDER IN THIS TRANSACTION, THEIR SUCCESSORS AND ASSIGNS, ALL AMOUNTS SECURED BY ANY AND ALL LIENS NOT SHOWN ABOVE . . . ."

2

After closing, the Romeros' counsel purchased the lien from Magnum Tire for $5,000 through Blackmoon Cattle Co. in which he was the only member and asserted a claim against Stewart in the amount of $30,000. That claim was paid. Stewart, which was contractually subrogated to the claims of the Nevarezes, filed suit against the Romeros. The latter did not appear at trial because their attorney did not inform them of the trial date; he did not believe their presence was necessary. Among other things, the trial court found Stewart Title to be an assignee of the Nevarezes' claim against the Romeros and awarded it damages against the Romeros.

*Legal and Factual Sufficiency*

The Romeros argue that the evidence is legally and factually insufficient to prove that the Nevarezes relied upon any warranty they gave in the deed.[2] This argument seems to be primarily based on the notion that Stewart knew of the lien and therefore could not have been misled by the warranty.[3]

First, Stewart was not asserting any claim of its own but was subrogated to the claims of the Nevarezes. Second, a general warranty deed binds the grantor to defend against title defects created by himself and all prior titleholders. *Stumhoffer v. Perales*, No. 01-12-00953-CV, 2014 Tex. App. LEXIS 10730, at *13 (Tex. App.—Houston [1st Dist.] September 25, 2014, no pet.); *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex. App.—Corpus Christi 1999, pet. denied); *see also Triplett v. Shield*, 406 S.W.2d 941, 947 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.) (stating that a covenant of general warranty means that the real property conveyed is free from encumbrances). The

---

[2] The Romeros do not challenge any specific findings of fact made by the trial court.

[3] At trial, the Romeros contended they were entitled to rely on the title insurance policy even though it was obtained and paid for by the Nevarezes as required by their lender. However, the trial court found that they were neither insureds nor beneficiaries under the policy, and they did not attack that finding.

3

purpose is to indemnify the purchaser against a loss or injury he may sustain by a defect in the seller's title. *Stumhoffer v. Perales*, 2014 Tex. App. LEXIS 10730, at *14.[4] If the covenant is broken, the breach occurs at the time of delivery of the deed. *Jackson v. McKenney,* 602 S.W.2d 124, 126 (Tex. Civ. App.—Eastland 1980, writ ref'd n.r.e.); *Compton v. Trico Oil Co.,* 120 S.W.2d 534, 537 (Tex. Civ. App.—Dallas 1938, writ ref'd).[5] In none of these cases have we found the requirement of a separate showing of reliance. *See Farmers Royalty Holding Co. v. Cherry*, 142 S.W.2d 255, 258 (Tex. Civ. App.—Galveston 1940), *aff'd*, 160 S.W.2d 908 (Tex. 1942) (stating that if buyers acquired their mineral deeds upon a valuable consideration it was clearly the duty of the seller to protect appellants against the outstanding vendor's lien notes against which he had given warranties).[6] Therefore, the lack of evidence of such was not fatal to the

---

[4] *Stumhoffer* stands for the proposition that attorney's fees cannot be recovered for a breach of the warranty of title. *Stumhoffer v. Perales*, No. 01-02-00953-CV, 2014 Tex. App. LEXIS 10730, at *20-21 (Tex. App.—Houston [1st Dist.] September 25, 2014, no pet.). Attorney's fees were awarded to Stewart. However, that issue was not raised on appeal.

[5] To the extent that an eviction is also required, *Stumhoffer v. Perales*, 2014 Tex. App. LEXIS at *14 (stating that to establish a breach of the warranty of title, the warrantee must show that at the time the land was conveyed, there was a superior title outstanding in another person and the warrantee was evicted by the superior title holder), constructive eviction, meaning that the facts are such that it would be useless to attempt to maintain the title conveyed where suit is threatened, suffices. *Compton v. Trico Oil Co.*, 120 S.W.2d 534, 538 (Tex. Civ. App.—Dallas 1938, writ ref'd).

[6] The opinions cited by the Romeros in support of the contrary position are inapposite. For instance, *Gibson v. Turner*, 156 Tex. 289, 294 S.W.2d 781 (1956) did not involve a claim founded upon a breached warranty of title implicit in a general warranty deed. An insurance company was not suing, via subrogation, to recover what it paid (per the terms of a title policy) to satisfy an encumbrance upon property. Rather, the comments in *Gibson* cited by the Romeros concern effort by a buyer of realty to reduce the purchase price (or avoid payment of the full consideration) by claiming that the seller did not own clear title to the realty. However, the buyer knew that the seller did not own clear title at the time of purchase. As stated by the court, "'Had the defendant been deceived as to the title he acquired, by the fraud of the vendor, or had he been ignorant of the defect of title, a very different case would have been presented. But when he made the purchase and accepted the conveyance with a knowledge of that defect, he must, we think be deemed to have waived the objection.'" *Id.* at 790, *quoting Brock v. Southwick*, 10 Texas 65, 1853 Tex. LEXIS 74 (Tex. 1853).

As for *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2002), the claims there involved breach of contract, breach of warranty, fraud, negligent misrepresentation, and violation of the Deceptive Trade Practices Act. They arose when the plaintiffs bought purportedly defective computer software products sold by Schein. A title insurer was not suing, via subrogation, to recover what it paid (per the terms of a title policy) to satisfy an encumbrance upon property sold via a generally warranty deed.

claim of Stewart. Moreover, although Stewart may have had knowledge of the existence of the lien, the only evidence at trial indicates that a mistake was made as to its validity due to the Romeros' discharge in bankruptcy. There is no evidence that the Nevarezes understood that the lien was still valid in spite of the bankruptcy discharge.

*Equitable Subrogation*

Next, the Romeros claim that Stewart was not entitled to equitable subrogation and urge several reasons why. Yet, Stewart's recovery was not founded upon equitable but rather contractual subrogation. It stepped into the shoes of the Nevarezes per the terms of the title policy once it satisfied the outstanding encumbrance.[7] And, the Romeros failed to cite authority holding that equitable principles apply to bar claims sounding in contract as opposed to equity.

The Romeros further argue that Stewart was not entitled to subrogation because it violated section 2502.003 of the Insurance Code. The statute provides that a title insurance company may not "wilfully issue" a binder for title insurance or a title insurance policy "showing no outstanding enforceable recorded liens on real property against which the company knows an outstanding enforceable recorded lien exists." TEX. INS. CODE ANN. § 2502.003(a) (West 2009). We find the contention of no moment. First, one violates the provision by "wilfully" issuing a title policy. To act with such a *mens rea*, the person must be more than negligent. *Burnett Ranches, Ltd. v. Cano Petroleum, Inc.*, 289 S.W.3d 862, 866-67 (Tex. App.—Amarillo 2009, pet. denied). That is, he must act with purpose and design. *Id.* We are cited to no evidence of record suggesting that Stewart, or the entity it relied on to investigate the status of title, was

_____

[7] The trial court executed a fact finding stating that: "Pursuant to the terms of the title insurance policy, if . . . [Stewart Title Company] was ever required to pay a claim, such as a lien, *under the terms of the policy* then . . . [Stewart Title Company] had the right to pursue reimbursement of the claim through the Buyers as such right was assigned to . . . [Stewart Title Company] by the Buyers *under the policy*." (Emphasis added). The Romeros did not attack this finding.

5

anything other than negligent. Indeed, evidence indicates that A. O. Thompson mistakenly concluded that the Romeros' bankruptcy somehow vitiated the need to secure a release of the Magnum Tire lien.

Accordingly, we overrule each issue raised and affirm the judgment of the trial court.


Per Curiam