

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-14-00398-CV

_____

EXPELLED GRAIN PRODUCTS, LLC AND SCOTT THEIRING,
APPELLANTS

V.

CORN MILL ENTERPRISES, LLC, APPELLEE

On Appeal from the 64th District Court
Castro County, Texas
Trial Court No. A9678-1311; Honorable Robert W. Kindaid, Jr., Presiding

August 17, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellants, Expelled Grain Products, LLC and Scott Theiring, appeal from a judgment entered in favor of Corn Mill Enterprises, LLC in a declaratory judgment and breach of contract cause of action. By eleven issues, Expelled Grain asserts the trial court erred by (1) and (2) granting summary judgment declaring that a contractual agreement existed between Expelled Grain and Corn Mill regarding the parties'

interests in Dimmit Corn Mill, LLC (DCM),[1] (3) granting summary judgment when there was a triable issue of fact concerning whether Expelled Grain's option to purchase Corn Mill's interest in DCM had expired, (4) rendering final judgment in Corn Mill's favor when the jury's answer to Question Number Three was ambiguous, (5) excluding much of Expelled Grain's evidence in support of its response to Corn Mill's motion for summary judgment, (6) accepting the jury's answer to Question Number Three when the answer was ambiguous, (7) allowing Steve Dawson, a fact witness, to testify as an expert at trial, (8) directing a verdict against Expelled Grain on its counterclaims for breach of contract, fraud, and declaratory judgment, (9) failing to submit Expelled Grain's affirmative defenses of estoppel, promissory estoppel, and prior breach to the jury, (10) awarding attorney's fees to Corn Mill when it failed to carry its burden of proof, and (11) granting judgment based upon legally and factually insufficient evidence. By two additional issues, Theiring asserts the trial court erred by (1) striking his *Original Petition in Intervention* and (2) finding he did not have a justiciable interest regarding his right to approve the agreement at issue. We affirm in part and reverse and remand in part.

THE TERM SHEET

Corn Mill, Expelled Grain, and Chad Smith were the initial members of DCM, a Texas limited liability company. In late 2012 and early 2013, disagreements arose between Corn Mill and Expelled Grain regarding the governance of DCM and the respective duties of the parties to one another. In February 2013, Expelled Grain placed DCM in a Chapter 11 bankruptcy proceeding. As a part of the bankruptcy

---

[1] Although DCM's name was subsequently changed to High Plains Milling, LLC, we refer to both DCM and High Plains throughout the remainder of this opinion as "DCM."

proceedings, the parties agreed to mediate their disputes. In April 2013, Corn Mill and Expelled Grain engaged in mediation hoping to resolve their differences. After negotiating over the course of three days through their respective counsel, the parties reached a tentative settlement agreement, and on or about April 19, 2013, they executed a document referred to as the Final Term Sheet (Term Sheet).[2]

One of the critical provisions of the Term Sheet was an option for Expelled Grain to purchase the interests of Corn Mill and Chad Smith in DCM. The initial option period was from April 19, 2013 to July 18, 2013. Thereafter, in order to keep the option open for an additional thirty-day period, Expelled Grain was required to pay certain non-refundable monetary consideration at specific periodic intervals. Expelled Grain paid that consideration and the option was extended to August 18, 2013.

Another important provision of the Term Sheet was the implementation of a procedure for the verification of funds and property contributed to DCM by Expelled Grain and its investors and the determination of the extent to which "inappropriate or unsupported expenditures" were made by or from the assets of DCM to or for the benefit of Expelled Grain and others. The Term Sheet then set forth the obligation of Expelled Grain to repay DCM an amount referred to as the "EGP Reimbursement Obligation." Finally, the Term Sheet made provision for the modification of Expelled Grain's ownership interest in the event it failed to close on the option to purchase Corn Mill's interest or pay its Reimbursement Obligation.

---

[2] The Term Sheet was signed by Richard Bell, as President and Authorized Manager of DCM, Jason Smith, as Corn Mill's Authorized Agent and Member Representative, Richard Bell, as Managing Member of Expelled Grain, Richard Bell, individually and as a member of the Management Committee of DCM, Victor Shukla, individually and as a member of the Management Committee of DCM, Rickey Smith, individually and as a member of the Management Committee of DCM, and Chad Smith, individually.

Specifically, the Term Sheet provided, in pertinent part, as follows:

1. The "Parties" to this settlement are:
   a. DCM,
   b. [Expelled Grain] and its members and investors,
   c. [Corn Mill] and its members and investors,
   d. Victor Shukla,
   e. Richard Bell,
   f. Rickey Smith,
   g. Chad Smith,
   h. and each of the above successors and assigns, partners, parents, subsidiaries, affiliates, agents, attorneys, representatives, servants, officers, directors, members, partners, shareholders, employees, heirs, personal representatives, and all persons in privity therewith . . . .

2. The Parties will enter into a Comprehensive Compromise & Settlement Agreement ("Agreement") which shall provide for the resolution of all issues in dispute involving their mutual ownership and interest in DCM and shall contain the material terms set forth below. These terms will be approved by the Members of [Corn Mill and Expelled Grain] by formal resolutions passed and binding upon all members of the respective companies.

3. The Agreement shall be prepared and executed by the representatives of [Expelled Grain] and [Corn Mill] no later than April 29, 2013.

4. An announcement will inform the Court that the pending matters have been resolved by a settlement which contemplates immediate dismissal of the Chapter 11 case. To the extent necessary, all hearings scheduled to be heard by the Bankruptcy Court on Friday, April 19, 2013, will be passed until the earliest possible date on or after April 29, 2013, but in no event later than the Amarillo docket scheduled for May 16, 2013, although it is anticipated that the bankruptcy will be dismissed before that time.

5. Upon the execution of the Agreement, the DCM Bankruptcy case . . . [w]ill be dismissed as soon as possible by an Agreed Order. Such dismissal shall be effected based upon the pending motion to dismiss of [Corn Mill], and the Management Committee of DCM will instruct its attorneys in the Bankruptcy to agree to the dismissal.

In addition, Paragraph 7 of the Term Sheet set forth the conditions whereby Expelled Grain was authorized to exercise its option to buyout Corn Mill's interest in DCM. Paragraph 7e provided that, if Expelled Grain failed to (1) pay the option fees as

4

specified or (2) complete the buyout contemplated by the option on or before April 29, 2013, DCM's equity ownership would be reallocated 84% to Corn Mill, 1% to Smith, and 15% to Expelled Grain. It is undisputed that while Expelled Grain did pay the required option fees, it did not complete the buyout as provided.

Paragraph 7g(ii) of the Term Sheet provided that Corn Mill would select a CPA auditor, to be retained by DCM, who would verify funds and property contributed by Expelled Grain and its investors to DCM and determine "whether and to what extent inappropriate or unsupported expenditures were made by or from the assets of DCM to or for the benefit of [Expelled Grain], Bell, Shukla, or any other affiliates . . . including cash withdrawals and unsupported or undocumented expense reimbursements (the 'Disputed Expenditures')." In the event that the auditor was not able to verify the Disputed Expenditures "because of the lack of necessary documentation from [Expelled Grain] or its principals, any unverified expenditures [would] be deemed unauthorized expenditures . . . ." Expelled Grain would then be obligated to reimburse DCM a "net amount equal to the Disputed Expenditures plus the amount that the Aggregate [Expelled Grain] investment is below $3.2 million (the '[Expelled Grain] Reimbursement Obligation')."

Paragraph 7g(v) of the Term Sheet further provided that if Expelled Grain's Reimbursement Obligation was not paid as provided, in the absence of the closing and funding of the buyout agreement, Expelled Grain's equity position would be proportionately reduced "according to the ratio of (a) 150% of the remaining balance of the [Expelled Grain] Reimbursement Obligation over (b) $3.2 million."

In April 2013, Steve Dawson, a certified public accountant and fraud investigator, met with Chad Smith, a member of DCM's Management Committee, regarding retention and the performance of the tasks contemplated by paragraph 7g. Dawson understood the object of his engagement was to identify the documentation for disbursements made by or on behalf of DCM to Expelled Grain and whether proof of the disbursement existed and whether it was appropriate and sufficient to support the identified disbursements. Based on his discussion with Chad Smith, Dawson's company executed a contract with DCM via its representative, Rickey Smith, for the performance of the procedures necessary to satisfy the objectives stated in the Term Sheet.

In July 2013, Dawson's company issued its Consultation Report. The Report indicated that a special review was undertaken of DCM's disbursements for the purpose of quantifying the disbursements that lacked valid supporting documentation. The special review was conducted in accordance with lawful forensic investigation techniques which included examining DCM's books and records, interviewing appropriate personnel, and engaging in other evidence-gathering procedures. The Report concluded there were inappropriate and/or unsupported disbursements of more than $3.5 million made by or from the assets of DCM to or for the benefit of Expelled Grain, Bell, Shukla, or any others. The validity and/or sufficiency of documentation to support capital and non-capital items was tested against Internal Revenue standards for the deductibility of such items and the reasonably prudent person standard which asks the question, "Would a reasonably prudent person disburse their own funds based on the documentation provided?"

During this period of time, Expelled Grain paid the option fees required by the Term Sheet to extend its option to purchase Corn Mill's equity interest in DCM. Furthermore, DCM's Chapter 11 bankruptcy was voluntarily dismissed, Richard Bell (a manager of Expelled Grain) resigned as President and as a member of DCM's Management Committee, Corn Mill obtained two of the three seats on DCM's Management Committee, and the state court lawsuit between Expelled Grain and Corn Mill was dismissed.

PROCEEDINGS BELOW

In November 2013, Corn Mill filed its original petition for declaratory judgment and breach of contract, and in February 2014, filed its *Traditional Motion for Partial Summary Judgment*. In March 2014, Theiring, as a member of Expelled Grain, filed his *Original Petition in Intervention* alleging the Term Sheet was not a valid contract. Theiring sought the recovery of money paid to Corn Mill by Expelled Grain. Also in March, Expelled Grain filed a counterclaim against Corn Mill alleging claims for declaratory relief, promissory estoppel, and other actions, thereby seeking $500,000 in reliance damages. Corn Mill moved to strike Theiring's petition alleging he lacked standing to bring Expelled Grain's claims, and on May 21, 2014, the trial court issued its order striking Theiring's petition.

The trial court sustained Corn Mill's objections to much of Expelled Grain's evidence filed in support of its response to Corn Mill's motion, and on June 3, 2014, issued its order granting in part and denying in part Corn Mill's *Traditional Motion for Partial Summary Judgment*. The trial court declared that the Term Sheet was a valid and enforceable contract, and per the terms of that contract, Expelled Grain's option to

7

purchase Corn Mill's interest in DCM terminated as of August 19, 2013. The trial court also declared that, effective August 19, 2013, Expelled Grain's ownership interest in DCM was reduced to 15% in accordance with the provisions of paragraph 7 of the Term Sheet.

Thereafter, in July 2014, the trial court conducted a three-day jury trial on the remaining issues. At the conclusion of that trial, the jury returned a verdict in Corn Mill's favor finding Expelled Grain's Reimbursement Obligation under the Term Sheet was $7,146,837.61 and that Expelled Grain had not reimbursed Corn Mill any amount toward that obligation. Thereafter, on August 5, 2014, the trial court entered its *Final Judgment* reaffirming its earlier order declaring the Term Sheet to be a valid and enforceable agreement and declaring Expelled Grain's ownership interest in DCM was reduced to 0.00%.

In addition, Corn Mill was awarded $33,500 actual damages for its breach of contract claim, $75,000 in attorney's fees through trial, $10,000 in attorney's fees in the event of an appeal to this court, and $10,000 in the event of an appeal to the Texas Supreme Court. This appeal followed.

DISCUSSION

Logic dictates that we decide issues five and seven before the remaining issues because these issues relate to the exclusion of evidence. Furthermore, because several of Expelled Grain's remaining issues overlap, we will discuss the following issues together—one and two, and four and six.

ISSUE FIVE

Nearly all of Expelled Grain's summary judgment evidence (i.e., certain portions of Richard Bell's affidavit and its exhibits) was excluded from consideration due to Corn Mill's objections. In its brief, Expelled Grain asserts the trial court improperly excluded the evidence because Corn Mill's objections were "obviously baseless." Nevertheless, Expelled Grain provides no discussion or legal citation in support of its assertion. The Texas Rules of Appellate Procedure require adequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The [Appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authority and to the record."). Accordingly, issue five is waived. *See ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 880 (Tex. 2010) (holding that failure to provide citation or argument and analysis as to an appellate issue may waive that issue); *Burnett Ranches, Ltd. v. Cano Petroleum, Inc.,* 289 S.W.3d 862, 870 (Tex. App.—Amarillo 2009, pet. denied) (citing *In the Interest of M.J.G.*, 248 S.W.3d 753, 760-61 (Tex. App.—Fort Worth 2008, no pet.)) (holding that conclusory or unexplained arguments without substantive analysis do not satisfy the requirements of Rule 38.1(i) and result in waiver of the issue). Expelled Grain's fifth issue is overruled.

ISSUE SEVEN

Expelled Grain further asserts the trial court erred in allowing Corn Mill to use its fact witness, Steve Dawson, as a testifying expert witness. During trial, Corn Mill sought to admit Dawson's "report" as an expert report. Expelled Grain did not object to Dawson as a fact witness, but instead, argued that admitting his testimony as an expert would confuse the jury and prejudice Expelled Grain by implicitly commenting on the

weight to be given to his fact testimony.[3]  Expelled Grain's objections were overruled and the report was admitted.  Expelled Grain contends Dawson's credibility as a fact witness was thus improperly bolstered, causing harm to Expelled Grain.  We disagree.

Assuming, without deciding, that the trial court erred by permitting Dawson to testify as an expert, we must determine whether the erroneous admission of Dawson's "expert" testimony probably (though not necessarily) caused the rendition of an improper judgment.  *See* TEX. R. APP. P. 44.1(a)(1); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).  According to the provisions of the Term Sheet, the parties agreed that a certified public accountant would analyze the financial records of DCM to determine whether there was sufficient documentation to support certain expenses and substantiate Expelled Grain's alleged investment in the mill prior to the formation of DCM.  The Term Sheet provided that Corn Mill was entitled to choose that person and it chose Dawson, a certified public accountant and certified fraud examiner with experience in forensic accounting work.  Expelled Grain now complains that Dawson did not perform an "audit" and that his testimony was "not really an expert opinion."

The Supreme Court has recognized "the impossibility of prescribing a specific test" for harmless error review.  *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (quoting *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992)).  The standard "is more a matter of judgment than precise measurement."  *Nissan Motor Co.*, 145 S.W.3d at 144.

---

[3] Expelled Grain also asserts Dawson was not an "independent" auditor.  The Term Sheet, however, did not expressly require that Dawson be independent.  Instead, the Term Sheet required that Corn Mill select a certified public accountant as the auditor and the accountant be retained by DCM.  As such, Dawson met the requirements of the Term Sheet.

Having examined the entire record, we find any error in the designation of Dawson as an expert witness was harmless.  First, the Term Sheet required a financial analysis be performed by an auditor who was a certified public accountant.  Thus, evidence of Dawson's professional status was relevant to the jury's determination of whether Corn Mill performed a financial review in compliance with the terms of the Term Sheet.  Furthermore, even though the Term Sheet used the word "audit" once and the parties frequently used that term in their questions, Dawson testified that his task was not to perform a financial statement audit to determine if the books and records complied with Generally Accepted Accounting Principles.  Instead, according to Dawson's testimony, his task was to "take the payments, the expenses, the expenditures that have been made for [DCM], on behalf of [DCM], and compare those to the supporting documentation . . . ."  In that regard, Expelled Grain did not challenge here, or in the trial court, the methodology or reliability of Dawson's calculations and/or conclusions contained in the financial review.  Because a technical financial "audit" in accordance with Generally Accepted Accounting Principles was not the issue, it is highly probable that this testimony did not cause the rendition of an improper judgment.  Accordingly, Expelled Grain's seventh issue is overruled.

ISSUES ONE AND TWO

By issues one and two, Expelled Grain asserts the trial court erred when it granted summary judgment in Corn Mill's favor by declaring that the Term Sheet constituted an enforceable contract between Corn Mill and Expelled Grain.  Expelled Grain contends the Term Sheet was not a binding contract because a Comprehensive Compromise and Settlement Agreement was not consummated and its members did

not pass a resolution approving such an agreement as purportedly required by paragraph 2 of the Term Sheet. We disagree. As a matter of law, we find the record here does not support Expelled Grain's contention on appeal. *See McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 417-18 (Tex. 2013) (holding that an agreement to enter into a future contract is enforceable, as a matter of law, if it contains all of the material terms of the contract).

Our review of a summary judgment is *de novo*. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Under the traditional summary judgment standard, the movant must show that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We view all evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Id.*

While intent is normally an issue of fact, in some cases, a court may determine the intention of the parties as a matter of law. *Gen. Metal Fabricating Corporation v. Stergiou,* 438 S.W.3d 737, 748-49 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g). The actions of the parties may conclusively establish their intention to enter into a binding agreement even though some terms are left for future agreement. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 33(1) cmt. a (1981)) ("[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon."). Further, "[a]greements to enter into future contracts are enforceable if they contain all material terms," *McCalla*, 416 S.W.3d at 418, and "[t]he material terms of a contract are

determined on a case-by-case basis." *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

The critical issue is whether the parties intended for the Term Sheet to be a presently binding and enforceable agreement in the absence of a Comprehensive Compromise and Settlement Agreement or whether they intended for it to have no legal significance until agreement was reached concerning the remaining issues and a final formal settlement document was executed. *See Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (concluding that if parties do not intend to be bound until other terms are determined or negotiated, or until execution of a formal document, then "there is no binding contract, but only an agreement to agree"). In determining the enforceability of a settlement agreement when future documents need to be prepared, "[t]he key question is whether the parties intended for a formal document to be executed as a condition precedent to being bound by contract." *Gen. Metal Fabricating*, 438 S.W.3d at 748 (quoting *Herring v. Heron Lakes Estates Owners Ass'n*, No. 14-09-00772-CV, 2011 Tex. App. LEXIS 5, at *2 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (mem. op.).

Here, the settlement agreement involved the settlement of a civil suit and a bankruptcy suit, and the sale of Corn Mill's interest in DCM. The settlement agreement contained a clause requiring dismissal of the civil suit and bankruptcy suit as soon as possible by agreed order after the Term Sheet was executed. The circumstances under which Expelled Grain could extend an option to purchase Corn Mill's interest in DCM and ultimately exercise its option were detailed in the Term Sheet. In addition, a certified public accountant was hired to fulfill the financial calculations required by the

Term Sheet in accordance with certain deadlines cited therein. The Term Sheet itself described its terms as "material terms" to be included in a *subsequent* Comprehensive Compromise and Settlement Agreement. Importantly, Expelled Grain and Corn Mill behaved as though the Term Sheet was a binding agreement after its execution—each completing its respective duties as required by the Term Sheet. Furthermore, this mutual performance continued despite the passing of the April 29, 2013 deadline for executing a Comprehensive Compromise and Settlement Agreement.

Expelled Grain does not assert there were any material terms upon which an agreement had yet to be reached when the Term Sheet was executed. Instead, Expelled Grain contends the Comprehensive Compromise and Settlement Agreement was a condition precedent to the enforcement of the terms of the Term Sheet. An agreement to agree is generally unenforceable under Texas law, *see Karns v. Jalapeno Tree Holdings, LLC*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied); however, the execution of the Comprehensive Compromise and Settlement Agreement was not characterized in the Term Sheet as a condition precedent to the formation of a contract, i.e., the Term Sheet contained no language indicating there were terms, material or otherwise, upon which agreement had yet to be reached or any conditional language such as "subject to." *Gen. Metal Fabricating*, 438 S.W.3d at 749-50 (collected cases cited therein). "The mere fact that additional documents were to be created does not, alone, create a fact issue as to the parties' intent to be bound." *Id.* at 750. Therefore, we conclude the trial court did not err in finding the Term Sheet constituted a binding and enforceable contractual obligation, as a matter of law.

Having affirmed the trial court's finding on summary judgment that the Term Sheet was an enforceable contract as a matter of law, Expelled Grain's assertion that Corn Mill's and Expelled Grain's members' approval by resolution of a Comprehensive Compromise and Settlement Agreement was a condition precedent for the Term Sheet's acceptance is moot. Further, individual members of the LLCs were not parties to the Term Sheet and their approval of the terms of a Comprehensive Compromise and Settlement Agreement was simply a term of the contract, not a condition precedent to the formation of the contract. Accordingly, we overrule Expelled Grain's first and second issues. *See McCalla*, 416 S.W.3d at 417-18.

ISSUE THREE

Expelled Grain next asserts that, if the Term Sheet is enforceable, the trial court erred in granting summary judgment in Corn Mill's favor by declaring Expelled Grain's option to purchase Corn Mill's interest in DCM had terminated as of August 19, 2013, when Expelled Grain had made all necessary payments under the Term Sheet to extend the option deadline. Again, we disagree.

Neither party disputes that Expelled Grain did not exercise its option to purchase Corn Mill's interest in accordance with the provisions of the Term Sheet. Nor do they dispute the fact that the Term Sheet explicitly provides that the option period may be "extended for a period of a maximum of 30 days" after July 19, 2013. However, Expelled Grain attempted to create an issue of fact whether Expelled Grain was "ready, willing, and able" to close the sale by a conclusory statement to that effect in Bell's affidavit. Other than Bell's conclusory statement, Expelled Grain did not submit any admissible evidence in support of its assertion that it was "ready, willing, and able" to

15

exercise the option and close the sale of Corn Mill's interest in DCM.[4]  Conclusory

statements do not raise a genuine fact issue that would preclude summary judgment.

*See Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex. 1997); *Elizondo v. Krist,* 338

S.W.3d 17, 22-23 (Tex. App.—Houston [14th Dist.] 2010), *aff'd,* 415 S.W.3d 259 (Tex.

2013).

Under the applicable standard of review, the summary judgment evidence did not

raise a genuine issue as to whether the provisions of the Term Sheet caused Expelled

Grain's option to terminate when Expelled Grain was "ready, willing, and able" to

consummate the sale of Corn Mill's interest or that it was prevented from closing by the

acts and omissions of Corn Mill.   Expelled Grain's third issue is overruled.

ISSUES FOUR AND SIX

Issues four and six assert that the trial court erred by issuing its judgment when

the jury's answer to Question Number 3 of the jury charge is ambiguous or lacks

explanation, i.e., the answer "No" was marked through, changed to "Yes," and initialed

by the jury foreman.[5]  We disagree.

Texas Rule of Civil Procedure 292 provides that "a verdict may be rendered in

any cause by the concurrence, as to each and all answers made, of the same ten or

more members of an original jury of twelve . . . ."  TEX. R. CIV. P. 292(a).  Further, Rule

293 states that, "[i]f the verdict is in proper form, no juror objects to its accuracy, no juror

---

[4] Much of Bell's affidavit and the evidence underlying it were excluded by the trial court as conclusory and/or hearsay.

[5] The *Verdict Certificate* indicated that ten of the jurors "agreed to each and every answer and . . . signed the certificate below."  Per the trial court's instructions, the presiding juror wrote down the answers the ten jurors agreed to in the charge and obtained the signatures of the ten jurors.

represented as agreeing thereto dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court." TEX. R. CIV. P. 293.

Here, at the trial's conclusion, the trial court read the jury's verdict without objection and neither party requested the jury be polled despite a query by the trial court. The trial court also granted Corn Mill's oral motion that judgment issue and pronounced judgment without objection. In addition, Expelled Grain did not argue either issue four or six in its *Motion for a New Trial.*

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1)(A). Furthermore, as a prerequisite to presenting a complaint for appellate review, the record must show that the trial court ruled on the request, objection, or motion, either expressly or implicitly; or refused to rule and the complaining party objected to that refusal to rule. TEX. R. APP. P. 33.1(a)(2). The purpose of a timely objection is to give the trial court or the opposing party an opportunity to correct the error or remove the basis for the objection.

Here, Expelled Grain failed to preserve an error for review by failing to object. Because Expelled Grain has not preserved any error for review, issues four and six are overruled. *See Osterberg v. Peca,* 12 S.W.3d 31, 55-56 (Tex. 2000).

ISSUES EIGHT AND NINE

Through issues eight and nine, Expelled Grain contends Corn Mill failed to follow the Term Sheet by not conducting an audit through an independent certified public

17

accountant, the trial court erred by directing a verdict against Expelled Grain on its counterclaims for breach of contract, fraud, and declaratory judgment, and the trial court erred by refusing to issue jury instructions on estoppel, excuse, or prior breach. Expelled Grain does not explain or cite this court to the record for the propositions that (1) Corn Mill was required to retain an "independent" certified public accountant per the Term Sheet, (2) the evidence was sufficient to withstand a motion for directed verdict on Expelled Grain's counterclaims, or (3) the evidence created a fact issue regarding its affirmative defenses of estoppel, excuse, or prior breach in order to justify a jury instruction. Neither does Expelled Grain cite to any legal authority in support of these assertions. We are not required to search a voluminous record, with no guidance from Expelled Grain, to discover possible trial court error. *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 762 (Tex. App.—Fort Worth 2003, pet. denied).

Texas Rule of Appellate Procedure 38.1(h) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). "Rule 38 requires [a party] to provide us with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue*." Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.* "Issues on appeal are waived if an appellant fails to support his contention by citations to appropriate authority or cites to a single non-controlling case." *Morrill v. Cisek*, 226 S.W.3d 545, 548 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Accordingly, issues eight and nine are waived.

18

ISSUE TEN

By its tenth issue, Expelled Grain asserts Corn Mill failed to carry its burden of proving its attorney's fees because Corn Mill failed to introduce billing records, statements, or details. Relying on *El Apple I, Ltd. v. Olivas*, Expelled Grain suggests Corn Mill's testimony concerning attorney's fees was too general and non-specific to enable a fact finder to meaningfully review whether the tasks performed and hours expended were reasonable and necessary under the lodestar method (a method of calculation of attorney's fees where the number of hours worked is multiplied by the prevailing hourly rate). *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (holding that "a party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours"). Corn Mill responds by contending that the heightened lodestar documentation requirements of *El Apple* are "only applicable to claims that require the federal-law-based lodestar method of awarding attorney's fees and not to awards of attorney's fees in [this] case."

For more than a century, Texas law has not allowed the recovery of attorney's fees unless the award is authorized by statute or contract. *Tony Gullo Motors, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009). Attorney's fees are recoverable for breach of contract suits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). That said, the Texas Civil Practice and Remedies Code provides that where a claim is based upon an oral or written contract, "reasonable attorney's fees" may be awarded in addition to the amount of the claim being asserted.

*Id.* The party seeking to recover attorney's fees carries the burden of proof to show entitlement to those fees. *Llanes v. Davila*, 133 S.W.3d 635, 640 (Tex. App.—Corpus Christi 2003, pet. denied). In order to recover attorney's fees under section 38.001, a litigant must (1) prevail on a breach of contract cause of action and (2) recover damages. *MBM Fin. Corp v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009). The Texas Supreme Court has stated that where "attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them" provided, however, the party seeking to recover attorney's fees still bears the burden of proving the amount and reasonableness of those fees. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). Therefore, because Corn Mill did prevail on its contract cause of action and is entitled to recover damages, it is also entitled to recover reasonable and necessary attorney's fees to the extent they are supported by the record.

The reasonableness of an award of attorney's fees is ordinarily a matter left to the sound discretion of the fact finder, and a reviewing court may not substitute its judgment for that of the jury. *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006). In *Arthur Andersen*, drawing from Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct,[6] the Supreme Court identified a non-exclusive list of factors to be considered in determining a reasonableness of a fee. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Those factors include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood

---

[6] Tex. Disciplinary R. Prof. Conduct 1.04, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9).

that the acceptance of representation in the case at issue will preclude other employment by the attorney; (3) the fee customarily charged in the locality for similar legal services; (4) the amount in controversy and the result obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Fourteen years after *Arthur Andersen*, the Texas Supreme Court issued its opinion in *El Apple.* In that opinion, the court held that a request for attorney's fees under the lodestar method must be supported by sufficient details of the work performed to enable the fact finder to make a meaningful review of the reasonableness of the fee request. *El Apple,* 370 S.W.3d at 761. "Sufficient evidence includes, at a minimum, evidence 'of the services performed, who performed them and at what hourly rate, when they were performed and how much time the work required.'" *Long v. Griffin,* 442 S.W.3d 253, 255 (Tex. 2014) (per curiam) (quoting *El Apple*, 370 S.W.3d at 764). Because the testimony in *El Apple* only included the total number of hours worked and generalities about discovery and the length of trial, the Supreme Court determined the evidence in that case was insufficient to support the award of attorney's fees and it remanded the case to the trial court for a redetermination of those fees. *Id.* at 765. Likewise, in *City of Laredo v. Montano,* the Supreme Court reversed and remanded the case to the trial court in order to redetermine attorney's fees when the attorney testified to the time expended and the hourly rate but failed to provide evidence of the time

devoted to specific tasks. *See City of Laredo v. Montano*, 414 S.W.3d 731, 736-37 (Tex. 2013) (finding lead attorney offered nothing to document the claim for attorney's fees other than generalized testimony about the tasks performed and his belief as to the number of hours spent preparing and trying the case).

*El Apple* involved a claim under the Texas Commission on Human Rights Act which mandated use of the lodestar method in such cases. *El Apple,* 370 S.W.3d at 760. *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 26.003(a) (providing that "the trial court shall use the [l]odestar method to calculate the amount of attorney's fees to be awarded class counsel"). Contrary to the position taken by Corn Mill, the Supreme Court has held that the *El Apple* requirements also apply to an attorney's fee request under section 38.001 of the Texas Civil Practice and Remedies Code if the party applying for the award "uses the lodestar method by relating the hours worked for each of the . . . attorneys multiplied by their hourly rates for a total fee." *Long*, 442 S.W.3d at 255; *Auz v. Cisneros*, 477 S.W.3d 355, 362-63 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same conclusion).

Here, an attorney for Corn Mill testified that he had generally monitored the case as the "responsible billing attorney" and that in that capacity he had reviewed all the attorney fee bills and was familiar with the time expended. As an experienced attorney, he testified generally as to different types of legal work that would go into the prosecution of a case such as this. He opined that there would be "some type of investigation," but he never detailed the investigation actually employed in this case. He further stated that "a lot of times there are motions that are filed"; however, once again, no specifics were given. He described the proceedings in this case in broad general

22

terms, only occasionally punctuating his testimony with factual statements relevant to this particular case. He described how the "hours start piling up," how "costs start to rack up," and how "time gets consumed" in the preparation of a case for trial. When asked about the specifics of this case, he testified that Corn Mill was billed on an hourly basis (stating "[s]o it is hours times the billing rate") and that the hourly rate of the attorneys working on this case varied between $150 to $345 per hour, depending on the age, experience, and expertise of the attorney performing the service. Finally, in response to the question as to whether he had a general opinion as to a reasonable fee for Corn Mill's attorneys in this case, he responded that a "reasonable fee for handling this case for [Corn Mill] through trial would be not less than $75,000 and probably not more than about $90,000." As to a reasonable fee for services rendered on appeal to this court, the attorney stated "a reasonable fee for handling an appeal . . . would be between 10 and $15,000." As to an appeal to the Texas Supreme Court he opined "a reasonable fee would be in the neighborhood of $10,000." At no time did the attorney offer specific testimony concerning the actual services rendered or by whom those services were rendered. No bills, statements, or other documentary evidence was offered.

Clearly, Corn Mill was using the lodestar method to prove its claim for attorney's fees. Because the Texas Supreme Court has made it clear that a party choosing the lodestar method of proving attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code must provide sufficient evidence to satisfy the requirements of *El Apple*, we conclude the evidence presented in this case is factually insufficient to support the amount of attorney's fees awarded because the evidence

presented does not provide sufficient information for a meaningful review of the lodestar calculation. Accordingly, issue ten is sustained. As directed by the Texas Supreme Court under these circumstances, we reverse the judgment of the trial court as to the issue of attorney's fees and remand the matter to the trial court for a redetermination of those fees consistent with this opinion.

ISSUE ELEVEN

Expelled Grain asserts the evidence at trial was legally and factually insufficient to support the jury's verdict and trial court's judgment. Again, Expelled Grain has failed to explain why the evidence was insufficient. Furthermore, it does not present any arguments or cite to any legal authority to support its position. As such, the complaint is waived. *Town of Flower Mound,* 111 S.W.3d at 762. Furthermore, even assuming the issue was adequately briefed, based upon the appropriate and well-known standard of review for legal sufficiency,[7] we would still find the evidence was legally sufficient to support the jury's verdict. Accordingly, we overrule issue eleven.

THEIRING'S ISSUES

By two issues, Theiring asserts the trial court erred by (1) striking his *Original Petition in Intervention* and (2) finding he did not have a justiciable interest regarding his right to approve the agreement at issue. In his *Original Petition In Intervention*, Theiring brought suit on "behalf of himself and derivatively on behalf of all other members of Expelled Grain . . . similarly situated, and Expelled Grain . . . ." Like Expelled Grain, he sought a declaration that the Term Sheet was not a valid enforceable contract and

---

[7] The standards by which we conduct a legal sufficiency review are well known and we refer the parties to *City of Keller v. Wilson,* 168 S.W.3d 802, 821-22 (Tex. 2005), for a statement of those standards.

sought the return of nearly $500,000 paid by Expelled Grain to extend its option to purchase Corn Mill's interest in DCM in accordance with the Term Sheet. In essence, he asserted the Term Sheet was not an enforceable contract, and if it were, he and other members of Expelled Grain had a contractual right to approve its terms under paragraph 2 of the Term Sheet.

Having already determined that the trial court properly granted summary judgment declaring the Term Sheet to be a valid enforceable contract and that paragraph 2 did not create a condition precedent giving Expelled Grain's members a contractual right to approve the terms of that contract, Theiring's complaints on appeal are moot. *See General Electric Capital Auto Lease, Inc. v. Bloom,* No. C14-92-00834, 1993 Tex. App. LEXIS 766, at *13 (Tex. App.—Houston [14th Dist.,] 1993, no pet.) (mem. op.) (once an appellate court overrules certain issues on appeal for lack of any supporting evidence of record, similar issues are rendered moot). Accordingly, we decline to address Theiring's issues.

CONCLUSION

The trial court's judgment is reversed as to the award of attorney's fees and remanded to the trial court for a redetermination of attorney's fees consistent with this opinion. In all other respects, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


25